866 F.2d 195
 The YOUGHIOGHENY AND OHIO COAL COMPANY, Petitioner,
v.
Evelyn MILLIKEN, widow of Harold Milliken; and Director,
Office of Workers' Compensation Programs, United
States Department of Labor, Respondents.
 No. 88-3213.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 29, 1988.
Decided Jan. 23, 1989.
 
 Thomas M. Hazlett (argued), Kinder, Harper, Hazlett & Hinzey, St. Clairsville, Ohio, for petitioner, Youghiogheny and Ohio Coal Co.
 Evelyn Milliken (Widow of Harold Milliken), Cadiz, Ohio, respondent, pro se and Gregory Kostelac (argued), Columbus, Ohio, for Evelyn Milliken.
 Karen Lynne Baker, Sylvia Kaser (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.
 Before KENNEDY, GUY and RYAN, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Youghiogheny and Ohio Coal Company (Y & O) seeks review of the order of the Benefits Review Board (Board) that reversed the order of the administrative law judge (ALJ) and awarded survivor benefits to Evelyn Milliken pursuant to the Black Lung Benefits Act (Act), 30 U.S.C. Sec. 901, et seq. On appeal, Y & O claims that the Board erred in applying the "Part B" regulations at 20 C.F.R. Sec. 410.490 to this claim. Alternatively, Y & O maintains that the Board misinterpreted section 410.490, resulting in its improper award of benefits to Milliken.
 
 
 2
 We conclude, based on a review of the record and applicable law in our circuit, that the Board did err in applying the Part B regulations to Milliken's claim and therefore reverse and reinstate the ALJ's order denying benefits.
 
 I.
 
 3
 Harold Milliken worked in the coal mines for approximately forty years before leaving in 1973 due to health problems. He died two years later and his widow, Evelyn Milliken, filed a claim for surviving spouse benefits under the Act in 1975.
 
 
 4
 The ALJ considered the claim pursuant to the regulations at 20 C.F.R. Sec. 727.203. He determined that Milliken's autopsy evidence was sufficient to invoke the presumption of section 727.203(a)(1) that Milliken had pneumoconiosis arising from his coal mine employment causing his total disability and death. The medical evidence was deemed insufficient to invoke the presumption under the remaining provisions of section 727.203(a). The ALJ also found, however, that the interim presumption was rebutted under 20 C.F.R. Sec. 727.203(b)(3) based on evidence that Milliken's pneumoconiosis did not impair his lung function and could not have contributed to his disability at death or his death. Therefore, the ALJ issued an order denying benefits and Milliken's widow appealed to the Board.
 
 
 5
 The medical evidence relied on by the ALJ to invoke the presumption under section 727.203(a)(1) consisted of autopsy evidence disclosing, among other ailments, some degree of anthracosis and fibrosis. Anthracosis falls within the definition of pneumoconiosis. 20 C.F.R. Sec. 727.202. The ALJ gave Dr. Karanjawala's autopsy report greater weight than conflicting reports of other pathologists because of his board certification and opportunity to view the entire lung specimen while conducting the autopsy.
 
 
 6
 The evidence relied on to rebut the presumption consisted of Dr. Kress's review of various medical records, including those of Dr. Jerome Kleinerman. Dr. Kleinerman had reviewed four slides from Milliken's autopsy containing eight sections of living tissue before concluding that Milliken did not have pneumoconiosis. Dr. Kleinerman specifically stated that pneumoconiosis could not have been the cause of any disability, that Milliken did not suffer a disability at the time of his death due to coal mine dust exposure, and that Milliken's death was not affected in any way by dust exposure. After reviewing all of the medical reports, Dr. Kress characterized Milliken's autopsy evidence of pneumoconiosis as exceedingly mild. Dr. Kress indicated that this minimal level of pneumoconiosis could not have contributed to Milliken's death and could not have caused any impairment or disability at the time of Milliken's death. Dr. Kress noted that the autopsy report revealed that Milliken died of cardiac arrest secondary to generalized arteriosclerotic cardiovascular disease and that there was no suggestion of lung cancer until after Milliken's death. In finding Dr. Kress's opinion sufficiently persuasive under section 727.203(b)(3) to establish rebuttal, the ALJ gave minimal weight to the portion of Milliken's death certificate listing, albeit illegibly, pneumoconiosis as a contributing cause of death. The primary cause listed was heart disease.
 
 
 7
 The Board reversed the ALJ's decision after finding itself obliged, sua sponte, to consider Milliken's widow's claim pursuant to the Part B regulations at 20 C.F.R. Sec. 410.490 in light of our findings in Kyle v. Director, OWCP, 819 F.2d 139 (6th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988). Under those regulations the Board found that Milliken's widow was entitled to a presumption that Milliken's pneumoconiosis was induced by his coal mine employment, Sec. 410.416(a), because he worked in the coal mines well over the requisite ten years. Additionally, the autopsy evidence was deemed sufficient to invoke the presumption that Milliken was totally disabled by and died from pneumoconiosis. Sec. 410.490b(1)(i). Because the Board found Y & O incapable of rebutting the presumption under section 404.490(c)(1) or (2), it reversed the ALJ and awarded benefits to Milliken's widow.
 
 
 8
 Y & O now appeals the Board's decision on two grounds. First, it claims that the Board erred in applying 20 C.F.R. Part 410 to this claim. Second, Y & O argues that even if 20 C.F.R. Part 410 applies, the Board misinterpreted those regulations and, consequently, improperly awarded benefits to Milliken's widow. Y & O's position that the Board erred in applying Part 410 to this claim is supported by the Director of the Office of Workers' Compensation Programs (Director), United States Department of Labor, in its brief as the federal respondent. Milliken's widow claims that the Board's decision is correct.
 
 II.
 
 9
 Before proceeding to the issues at hand, we note the limitations on our review of a decision of the Board. "The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (quoting Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980)); see also Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1116 (6th Cir.1984), cert. denied, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Likewise, the Board's review of the ALJ's order is confined to reviewing the order for errors of law and ascertaining whether substantial evidence gleaned from the record as a whole supports the ALJ's factual findings. Rowe, 710 F.2d at 254.
 
 
 10
 In this instance, the Board took it upon itself to correct a perceived erroneous application of law by the ALJ. We must now determine whether the Board's action was proper.
 
 
 11
 As synopsized in Mullins Coal Co. v. Director, OWCP, 484 U.S. ----, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), the black lung benefits program evolved under several statutory enactments accompanied by different rules and regulations governing the processing of benefit claims, the application of which depended on the time the claim was filed. Claims filed before July 1, 1973, were processed by the Social Security Administration in accordance with Part 410 of the regulations established by the Secretary of the Department of Health, Education and Welfare (HEW). These claims were deemed "Part B" claims and were federally funded.
 
 
 12
 "Part C" claims encompass those filed on or after July 1, 1973, are employer funded, and are administered by the Director of Office of Workers' Compensation in accordance with regulations established by the Secretary of Labor (Secretary). Under Part C, claims filed after April 1, 1980, are evaluated in accordance with permanent criteria set forth at 20 C.F.R. Part 718 and Sec. 725.4(a). Claims filed prior to April 1, 1980, are governed by interim regulations set forth in Part 727 and established by the Secretary pursuant to 30 U.S.C. Sec. 902(f)(1). Importantly, the Secretary was directed via a 1977 amendment to 30 U.S.C. Sec. 902 that criteria established for Part C claims must be no more restrictive than criteria applicable to a claim filed on June 30, 1973, 30 U.S.C. Sec. 902(f)(2), when the Part B regulations of HEW were in effect. The pertinent statutory provisions state:
 
 
 13
 (f)(1) The term "total disability" has the meaning given it by regulations of the Secretary of Health and Human Services for claims under part B of this subchapter, and by regulations of the Secretary of Labor for claims under part C of this subchapter, subject to the relevant provisions of subsections (b) and (d) of section 923 of this title....
 
 
 14
 ....
 
 
 15
 (2) Criteria applied by the Secretary of Labor in the case of--
 
 
 16
 (A) any claim which is subject to review by the Secretary of Health and Human Services, or subject to a determination by the Secretary of Labor, under section 945(a) of this title;
 
 
 17
 (B) any claim which is subject to review by the Secretary of Labor under section 945(b) of this title; and
 
 
 18
 (C) any claim filed on or before the effective date of regulations promulgated under this subsection by the Secretary of Labor;
 
 
 19
 shall not be more restrictive than the criteria applicable to a claim filed on June 30, 1973, whether or not the final disposition of any such claim occurs after the date of such promulgation of regulations by the Secretary of Labor.
 
 
 20
 30 U.S.C. Sec. 902(f)(1)-(2).
 
 
 21
 In Kyle v. Director, 819 F.2d 139 (6th Cir.1987),[1] we determined that Kyle's claim for black lung benefits had to be considered under HEW's Part 410 regulations even though his claim was filed after July 1, 1973, because the Secretary's Part 727 regulations otherwise applicable by virtue of the time Kyle filed his claim were more restrictive than the earlier HEW regulations, in contravention of the mandate of 30 U.S.C. Sec. 902(f)(2). Specifically, under the Secretary's regulation at section 727.203(a)(1), Kyle was not entitled to a presumption of disability on the basis of a positive x-ray reading for pneumoconiosis because he lacked the ten years of coal mine employment required to invoke the presumption under that section. In contrast, however, Kyle would have been entitled to invoke the presumption under the HEW Part 410 regulations because section 410.490(b) contains no requirement of a specified duration of coal mine employment to invoke the presumption. Thus, we determined that Kyle was entitled to have his claim evaluated under the provisions of section 410.490 even though his claim was not filed until 1980 and over protestations that the "no more restrictive" limitation on the Secretary's criteria referred only to medical criteria and not to such evidentiary or adjudicatory criteria as length of service. Kyle, 819 F.2d at 142.
 
 
 22
 In the present case, Milliken's widow argues that the Secretary's Part 727 rebuttal regulations are more restrictive than their HEW Part 410 predecessors because the former allows more evidence to be considered for purposes of rebutting the interim presumption than the latter.
 
 
 23
 Y & O argues that the Part 727 regulations are more restrictive than the Part 410 regulations only to the extent that they require ten years of coal mine employment to supplement other medical requirements necessary to invoke the presumption. Moreover, Y & O asserts that, unlike Kyle, who had only eight and one-half years of coal mine employment, Milliken had nearly forty years of such employment, thereby rendering the determination of Milliken's claim equal under both the Part 410 and Part 727 regulations and obliging the Board to evaluate the claim pursuant to the Part 727 regulations.
 
 
 24
 The Board relied on Kyle as compelling it to adjudicate Milliken's widow's claim under Part 410 criteria because the Part 727 regulations allow the use of evidence establishing the absence of pneumoconiosis or that the total disability or death of a miner did not arise in whole or in part out of coal mine employment for purposes of rebuttal. Part 410 has no such provisions.
 
 
 25
 The pertinent Part 727 regulations governing the interim presumption and its rebuttal provide:
 
 
 26
 Sec. 727.203 Interim presumption.
 
 
 27
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 
 
 28
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410.428 of this title);
 
 
 29
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table....
 
 
 30
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table....
 
 
 31
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;
 
 
 32
 (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.
 
 
 33
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 34
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 35
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 36
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 37
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis....
 
 
 38
 Notably, the Part 410 regulations do not contain rebuttal provisions comparable to 20 C.F.R. Sec. 727.203(b)(3) and (4). The pertinent Part 410 regulations provide:
 
 
 39
 Sec. 410.490 Interim adjudicatory rules for certain Part B claims filed by a miner before July 1, 1973, or by a survivor where the miner died before January 1, 1974.
 
 
 40
 ....
 
 
 41
 (b) Interim presumption. With respect to a miner who files a claim for benefits before July 1, 1973, and with respect to a survivor of a miner who dies before January 1, 1974, when such survivor timely files a claim for benefits, such miner will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of his death, or his death will be presumed to be due to pneumoconiosis, as the case may be, if:
 
 
 42
 (1) One of the following medical requirements is met:
 
 
 43
 (i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410.428); or
 
 
 44
 (ii) In the case of a miner employed for at least 15 years in underground or comparable coal mine employment, ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2)) as demonstrated by values which are equal to or less than the values specified in the following table....
 
 
 45
 (2) The impairment established in accordance with paragraph (b)(1) of this section arose out of coal mine employment (see Secs. 410.416 and 410.456).
 
 
 46
 (3) With respect to a miner who meets the medical requirements in paragraph (b)(1)(ii) of this section, he will be presumed to be totally disabled due to pneumoconiosis arising out of coal mine employment, or to have been totally disabled at the time of his death due to pneumoconiosis arising out of such employment, or his death will be presumed to be due to pneumoconiosis arising out of such employment, as the case may be, if he has at least 10 years of the requisite coal mine employment.
 
 
 47
 (c) Rebuttal of presumption. The presumption in paragraph (b) of this section may be rebutted if:
 
 
 48
 (1) There is evidence that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1)), or
 
 
 49
 (2) Other evidence, including physical performance tests (where such tests are available and their administration is not contraindicated), establish that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1))....
 
 
 50
 A review of the law in our circuit reveals that Kyle requires us to adjudicate claims under Part 410 regulations that would otherwise be processed under Part 727 regulations when a claimant cannot satisfy the ten-year coal mine employment requirement of section 727.203(a) necessary to invoke the interim presumption of total disability or death due to pneumoconiosis. We have also applied the Part 410 regulations governing retroactivity of benefits to a claim that was filed when those regulations were in effect but that was finally adjudicated subsequent to the 1977 amendment establishing regulations limiting retroactivity. Director, OWCP v. Forester, 857 F.2d 1121 (6th Cir.1988) (citing Kyle, 819 F.2d 139, for the proposition that the 1977 amendments were intended to ease recovery of black lung benefits).
 
 
 51
 We have explicitly declined, however, to extend our holding in Kyle to the regulations governing rebuttal of the interim presumption. For example, in Grant v. Director, OWCP, 857 F.2d 1102 (6th Cir.1988), we stated that "[w]e read Kyle as requiring that whenever the ten-year coal mine employment requirement renders Sec. 727.203's presumption unavailable for a claim filed prior to March 31, 1980, the ALJ should apply the less restrictive presumption contained in Sec. 410.490." Id. at 1106.
 
 
 52
 Additionally, in Warman v. Pittsburgh & Midway Coal Mining Co., 839 F.2d 257 (6th Cir.1988), a case considering whether the Board's finding of rebuttal was erroneous as a matter of law, we noted that Kyle is "expressly limited to invoking presumptions under Part B criteria." Id. at 258 n. 1 (emphasis added).
 
 
 53
 This view was also expressed in Prater v. Hite Preparation Co., 829 F.2d 1363 (6th Cir.1987), in which we stated that "Part B cases are not applicable to Part C claims with respect to rebuttal of the interim presumption once it is properly established." Id. at 1366 n. 2 (citing Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 490 (6th Cir.1985)).
 
 
 54
 Finally, in our unpublished decision of Gaskey v. Benefits Review Board, 819 F.2d 289 (6th Cir.1987), referenced by the Director,[2] we considered a claimant's argument that his claim should be evaluated under the interim presumption provisions of 20 C.F.R. Part 410 because the rebuttal provisions of Part 727 are more restrictive than the Part 410 rebuttal regulations. Gaskey lacked the requisite duration of coal mine employment necessary to invoke the presumption under 20 C.F.R. Sec. 410.490(b)(1)(ii) even though he qualified for the presumption under 20 C.F.R. Sec. 727.203. Rebuttal was established under 20 C.F.R. Sec. 727.203(b)(3). Because Gaskey was unable to demonstrate how the Part 727 criteria were more restrictive than the Part 410 criteria as applied to him, we never had to reach the issue posed by the instant case. That is, we disposed of the claim on the basis of presumption regulations.
 
 
 55
 In Kyle itself, we distinguished our holding with respect to invocation of the presumption from our previous case of Ramey, 755 F.2d 485, which considered what specific evidence is necessary to rebut a presumption of pneumoconiosis under Part C regulations. In Ramey, we considered the appropriateness of relying on medical testimony alone to rebut the presumption of total disability under Part C regulations when the Part B regulations require both vocational and medical testimony. We held that even though vocational and medical evidence was required to rebut the Part B presumption, medical evidence alone would suffice to rebut the Part C presumption. We stated in Ramey that we did not construe the Secretary's mandate to fashion criteria no more restrictive than criteria applicable to Part B claims as requiring "continuance of the evidentiary rules applicable to Part B cases with the result that the presumption of physical disability created by 20 C.F.R. Sec. 727.203(a) could not be rebutted solely by proof that the claimant is not physically disabled for his usual coal mine work." 755 F.2d at 490. In Kyle we clarified how Ramey should be interpreted. "Ramey should not be read to suggest that the Part B presumptions no longer apply. On the contrary, Ramey should be interpreted to hold that, although the Part B presumptions are preserved, under certain limited circumstances, the specific evidence necessary to rebut those presumptions may be altered over time." Kyle, 819 F.2d at 144. This suggests that even if the present claim was evaluated pursuant to presumption regulations under Part 410, we may nonetheless employ Part 727 regulations to rebut the presumption. This view comports with the legislative intent of the Act that all medical evidence be considered in adjudicating claims.[3]
 
 
 56
 In view of these cases, including Kyle, we are persuaded that nothing in Kyle mandates consideration of Milliken's widow's claim pursuant to the Part 410 rebuttal provisions because, with respect to invocation of the presumption, both the Part B and Part C regulations treat her claim equally. Kyle does not require us to go further.
 
 
 57
 Our remaining task is to determine whether the ALJ's finding of rebuttal pursuant to section 727.203(b)(3) is supported by substantial evidence derived from the record as a whole. Rowe, 710 F.2d at 254. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).
 
 
 58
 In this case, the only evidence regarding Milliken's pneumoconiosis consists of the autopsy report conducted by Dr. Karanjawala and the death certificate with an illegible entry of pneumoconiosis as a contributing cause of death. The autopsy report also revealed evidence of heart disease and cancer. The death certificate lists heart disease as the primary cause of death. Moreover, one physician claimed Milliken did not have pneumoconiosis and another found exceedingly mild pneumoconiosis that could not have caused disability or death. A review of the record indicates that the ALJ's finding of rebuttal is supported by substantial evidence. We decline to disturb those findings.
 
 
 59
 For the foregoing reasons, we REVERSE the order of the Benefits Review Board and REINSTATE the order of the ALJ.
 
 
 
 [1]
 The petition for certiorari was denied in Kyle in light of the Supreme Court's recent opinion in Pittston Coal Group v. Sebben, --- U.S. ----, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). In that case, the Supreme Court addressed whether 30 U.S.C. Sec. 902(f)(2) requires application of 20 C.F.R. Sec. 410.490 invocation of presumption provisions to claims failing to qualify for invocation of the presumption under 20 C.F.R. Sec. 727.203(a). In Pittston, --- U.S. ---- 109 S.Ct. 414 which affirmed Broyles v. Director, OWCP, 824 F.2d 327 (4th Cir.1987), and reversed In re Sebben, 815 F.2d 475 (8th Cir.1987), the Court determined that the interim Department of Labor (Labor) regulation governing invocation of the presumption, 20 C.F.R. Sec. 727.203(a), violates 30 U.S.C. Sec. 902(f)(2) because the earlier HEW criteria conferred a presumption of entitlement upon a miner who established pneumoconiosis plus ten years of coal mine employment or proof that the pneumoconiosis was caused by coal mine employment, whereas under the interim Labor regulation a claimant has to establish pneumoconiosis and ten years of coal mine employment. Thus, the interim Labor regulation does not allow proof that pneumoconiosis was caused by coal mine employment to substitute for a ten-year requirement of coal mine employment and, therefore, is more restrictive than the previous HEW presumption regulation. The Court held that the court of appeals in Broyles properly remanded the case to the Benefits Review Board for further proceedings. However, the Court reversed the court of appeals' mandamus order that compelled readjudication of claims decided under erroneous standards in In re Sebben because the cases consolidated therein had become final due to the claimants' failure to seek administrative remedies or to timely appeal
 The Supreme Court's opinion in Pittston effectively disposed of the issue posed by the petition for certiorari in Kyle and effectively affirmed our holding in that case. The Pittston opinion, however, expressly declined to consider the validity of the more expansive rebuttal provisions in 20 C.F.R. Sec. 727.203(b) because the Pittston respondents conceded the validity of those provisions notwithstanding the fact that they permit rebuttal of more elements of statutory entitlement than their HEW predecessors. Thus, the Pittston opinion sheds no light on the issue before us today.
 
 
 [2]
 Although we generally disfavor citation to unpublished decisions, we note that "[i]f counsel believes ... that an unpublished decision has precedential value in relation to a material issue in a case ... such decision may be cited if counsel serves a copy thereof on all other parties in the case and on the court." 6th Cir.R.24
 
 
 [3]
 The conferees intend that the Secretary of Labor shall promulgate regulations for the determination of total disability or death due to pneumoconiosis. With respect to a claim filed or pending prior to the promulgation of such regulations, such regulations shall not provide more restrictive criteria than those applicable to a claim filed on June 30, 1973, except that in determining claims under such criteria all relevant medical evidence shall be considered in accordance with standards prescribed by the Secretary of Labor and published in the Federal Register
 Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 864, 95th Cong. 2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 309.