895 F.2d 1412
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EASTERN COAL COMPANY, Petitioner,
v.
Monroe WALLEN, Respondent,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 89-3079.
 United States Court of Appeals, Sixth Circuit.
 Feb. 13, 1990.
 
 Before KRUPANSKY and RYAN Circuit Judges, and EDWARD H. JOHNSTONE, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner, Eastern Coal Company (ECC), has petitioned this court for review of the final decision of the Benefits Review Board (Board), which had granted respondent's, Monroe Wallen (Wallen), application for black lung disability benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. Sec. 901 et seq.
 
 
 2
 The administrative record disclosed the following uncontroverted facts. On September 12, 1974, Wallen applied for black lung disability benefits with the United States Department of Labor (DOL). On May 13, 1975, the DOL mailed Wallen a "CM-990" letter informing him that in order to qualify for benefits he had to furnish additional medical evidence because that which had already been submitted was insufficient to prove pneumoconiosis. Wallen failed to submit the requested information and his application for benefits became dormant for the next four years.
 
 
 3
 As a result of the Black Lung Benefits Reform Act of 1977, which provided more lenient standards for benefit eligibility and reopened applications that had been rejected prior to March 1, 1978, the DOL advised Wallen by a letter dated April 24, 1979 that his application for benefits was being reconsidered.
 
 
 4
 On May 15, 1979, the DOL issued a Notice of Initial Finding, wherein it determined that Wallen was entitled to benefits and identified ECC as the coal mine operator liable for the payment of the award. Subsequently, ECC contested liability and the matter was referred to an administrative law judge (ALJ) who conducted a hearing on March 25, 1980.
 
 
 5
 After reviewing the submitted x-ray evidence, the ALJ invoked the interim presumption of disability in favor of the claimant pursuant to 20 C.F.R. Sec. 727.203(a)(1). The ALJ further concluded that ECC had not presented sufficient evidence to rebut the presumption of pneumoconiosis as required by 20 C.F.R. Sec. 727.203(b) and, on November 25, 1980, awarded Wallen black lung benefits.
 
 
 6
 While ECC's appeal of the ALJ's decision awarding Wallen benefits was pending before the Board, Congress enacted the Black Lung Benefits Amendments of 1981 (1981 Act), which directed, inter alia, the transfer of liability in certain designated cases from coal mine operators to the Black Lung Disability Trust Fund (Trust Fund). The 1981 Act provided that the liability for a claim would transfer to the Trust Fund if: (a) the claim was denied prior to March 1, 1978; and (b) the claim later qualified pursuant to the more lenient criteria of the 1977 Reform Act.
 
 
 7
 As a result of the 1981 Act, ECC, on March 9, 1982, filed a motion with the Board requesting that it be dismissed as a party to this action and that the Trust Fund assume payment of the black lung benefits awarded to Wallen. On July 31, 1985, the Board denied ECC's motion to dismiss concluding that the DOL's "CM-990" letter mailed to Wallen on May 13, 1975 did not constitute an informal denial of his application for black lung benefits under 30 U.S.C. Sec. 902(i), but was merely a warning instructing him to furnish additional medical evidence to support his disability claim, and consequently, liability for Wallen's black lung application could not be transferred to the Trust Fund. Furthermore, on January 13, 1986, the Board vacated the ALJ's award of black lung benefits to Wallen and remanded the matter to the ALJ for further consideration of the ECC's rebuttal evidence addressing the interim presumption under 20 C.F.R. Sec. 727.203(b).
 
 
 8
 On March 24, 1986, the ALJ, on remand, concluded that ECC had presented sufficient evidence to rebut the interim presumption of pneumoconiosis pursuant to 20 C.F.R. Sec. 727.203(b)(3). The ALJ decided that "the doctors' reports establish that [Wallen was] disabled by conditions that did not arise in whole or part out of coal mine employment, namely, stroke, diabetes, and heart disease" and accordingly denied Wallen's application for black lung benefits.
 
 
 9
 On March 22, 1988, the Board reversed the ALJ's decision denying Wallen benefits with the dispositive statement that the ALJ's opinion "does not meet the Sixth Circuit's standard for rebuttal under subsection (b)(3) since it does not establish that the sole cause of [Wallen's] disability is something other than pneumoconiosis." ECC thereafter filed a timely appeal to this Court.
 
 
 10
 On appeal, ECC argued that the Board had erroneously reversed the ALJ's denial of benefits because the ALJ had misapplied the standard mandated by Sec. 727.203(b)(3) and because substantial evidence supported the ALJ's conclusion.
 
 
 11
 An examination of the administrative record reflects that substantial rebuttal evidence supported the ALJ's conclusion that Wallen's disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3). This court has considered rebuttal under subsection (b)(3) on several occasions and has held that the provision
 
 
 12
 grants the employer the chance to prove that the miner's disability did not arise, in whole or in part, from his coal mine employment. If an employer is able to prove that pneumoconiosis played no part in causing the miner's disability, then the employer has satisfied the requirement of section 727.203(b)(3). Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits.
 
 
 13
 Tennessee Consol. Coal Co. v. Crisp, 866 F.2d 179, 184 (6th Cir.1989) (quoting Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985) (emphasis in original); accord Saginaw Mining Co. v. Ferda, 879 F.2d 198 (6th Cir.1989); Wright v. Island Creek Coal Co., 824 F.2d 505, 508 (6th Cir.1987). "This court has interpreted 20 C.F.R. Sec. 727.203(b)(3) to mean that if an opposing party is able to prove that pneumoconiosis was not a contributing cause to a miner's disability, then the interim presumption is rebutted." Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 259 (6th Cir.1988). An employer must prove that the "sole" cause of a miner's disability was other than pneumoconiosis. Ramey v. Kentland Elkhorn Coal Co., 755 F.2d 485, 491-92 (6th Cir.1985).
 
 
 14
 In the case at bar, the Board erred in concluding that the medical evidence did not support the ALJ's decision. The Board reasoned that the opinion of Dr. Myes, that Wallen's disability was caused by a stroke, heart attack and diabetes and not from a "significant pulmonary disability," did not constitute evidence of sufficient weight to rebut the interim presumption of pneumoconiosis disability to satisfy the mandate of 20 C.F.R. Sec. 727.203(b)(3). The Board's rationale, however, ignored the ALJ's reliance upon the cumulative medical opinions of a number of physicians in addition to that expressed by Dr. Myers in determining that pneumoconiosis played no part in Wallen's disability.
 
 
 15
 An appellate court, when reviewing a petition requesting review of the final decision of the Board, must affirm the ALJ's factual determinations if supported by substantial evidence. Warman, 893 F.2d at 258. "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion." Youghiogheny & Ohio Coal Co. v. Milliken, 866 F.2d 195, 202 (6th Cir.1989) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). A review of the record demonstrates that although there existed contradictory medical evidence, i.e., reports from Dr. Odom and Dr. Wright wherein it was concluded that Wallen was disabled in part by a pulmonary impairment resulting form his coal mine employment, the ALJ's decision denying benefits was supported by substantial evidence.
 
 
 16
 On February 25, 1975, Dr. Warden examined Wallen and concluded that there was no evidence of pneumoconiosis or silicosis. Dr. Warden further testified that Wallen could not return to work in the coal mine because of his hypertensive vascular and arterial sclerotic heart disease which conditions were unrelated to Wallen's coal mine employment. In addition, Dr. Anderson diagnosed arteriosclerotic heart disease, diabetes mellitus which symptoms were unrelated to Wallen's coal mine employment and ruled out pneumoconiosis.
 
 
 17
 Finally, Dr. Jones testified at the hearing before the ALJ that there was no objective evidence of pulmonary disease or pneumoconiosis and that any complaints of shortness of breath by Wallen resulted from hypertensive cardiovascular disease. Dr. Tweel, who examined Wallen on January 13, 1975, corroborated the medical findings of Dr. Jones and diagnosed angina pectoris, probable ischemic cardiac disease, and no evidence of significant pulmonary disease. In sum, the medical data and testimony of record constituted substantial evidence to support the ALJ's determination that ECC had proved that Wallen's disability was not due in whole or part to coal miner's pneumoconiosis, pursuant to section 727.203(b)(3).
 
 
 18
 Accordingly, the Board's determination that Wallen was eligible to receive coal miner's disability benefits is REVERSED and the ALJ's decision is reinstated.[1]
 
 
 
 *
 The Honorable Edward H. Johnstone, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 ECC has additionally argued that it would not be liable for any potential benefits due to Wallen. ECC has contended that the Black Lung Disability Trust Fund (Trust Fund) created by the Black Lung Benefits Amendments of 1981 (1981 Act) would be liable for any potential benefits due to Wallen because the DOL's CM-990 letter mailed to Wallen on May 13, 1975 was in effect a denial of Wallen's initial application of black lung benefits. Pursuant to the language of the 1981 Act, any liability of benefits due to Wallen would transfer to the Trust Fund if the CM-990 letter was in fact a denial. See 30 U.S.C. Sec. 902(i). The DOL, on the other hand, has argued that the CM-990 letter was merely a warning to Wallen and not a denial of benefits, and accordingly, ECC and not the Trust Fund would be liable for any potential benefits to Wallen. Since this court concludes that the ALJ's decision denying Wallen benefits was supported by substantial evidence, this issue need not be resolved