890 F.2d 416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ira B. LITTLEPAGE, Widow of Daniel R. Littlepage, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 89-3305.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1989.
 
 Before BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Ira Littlepage appeals a decision of the Benefits Review Board affirming a decision by the Administrative Law Judge denying her application for benefits as a surviving dependent pursuant to the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. Secs. 901-945. The Act provides for payment of benefits "in respect of the death of any miner whose death was due to pneumoconiosis or ... who at the time of his death was totally disabled by pneumoconiosis." Id. at Sec. 921(a).
 
 I.
 
 2
 Claimant Ira Littlepage filed a survivors' claim for black lung benefits on January 31, 1983, alleging that her husband died on December 20, 1982, due to coal worker's pneumoconiosis. The Office of Workers' Compensation Programs, Department of Labor, administratively denied the claim on July 27, 1983, and, following an informal conference held on December 12, 1984, again denied the claim on February 5, 1985. Petitioner then requested that the claim be referred to an Administrative Law Judge (ALJ) for a hearing. This hearing was conducted on May 4, 1987. On September 9, 1987, the ALJ issued his Decision and Order denying benefits. Claimant appealed the ALJ's denial of benefits to the Benefits Review Board (Board) which affirmed the ALJ's denial of benefits on March 31, 1989. Claimant thereafter filed this timely appeal.
 
 
 3
 The following evidence was introduced at the May 4, 1987 hearing.
 
 
 4
 The deceased, Daniel Littlepage, was born on January 21, 1983. He died December 20, 1982 at the age of 89. Prior to his death the miner had not filed a claim for black lung benefits under the Act, nor had he filed any claim for workers' compensation. Decedent smoked unfiltered cigarettes and a pipe for over 54 years. Furthermore, decedent took medication to control high blood pressure. Claimant also indicated that her husband had had heart trouble.
 
 
 5
 The ALJ determined that the decedent had 11 years of qualifying coal mine employment (1920 to 1931) in the Hart Coal Company underground mines. Littlepage became a farmer after leaving the mines in 1931. There is no indication from the evidence and testimony that was available to the ALJ that the decedent engaged in any type of gainful employment during the 51 years after he stopped working in the coal mines except for a seven-year period, from 1931-1938, during which he and his wife, the claimant, sold some dairy products from the farm. Furthermore, there are no medical records of any treatment prior to his hospitalization on November 11, 1982 for treatment of abdominal pain, distention and fever. The petitioner and her son testified that decedent had suffered from a shortness of breath and persistent coughing since approximately 1968. They testified that decedent was able to walk only from his wheelchair to his bed during the four to five years preceding his death.
 
 
 6
 The relevant medical evidence for this claim is primarily the readings, and rereadings, of several x-rays, and the medical opinions of two physicians. In his Decision and Order, the ALJ summarized the x-ray evidence as follows:
 
 
 7
 Date of XRay/
Date of Reading Physician Interpretation
--------------- ------------ -------------------
 9/29/82 V.I. Pokorny Uncertain
 B/C(R)
11/11/82 J.L. Beck Negative
 B/C(R)
11/11/82 J.D. Stokes P, category 1/2
 3/1/83 B/C(R)
11/11/82 M. Bassali p & s, all zones,
 3/23/83 B/C(R), B 2/3, P, complicated
 Type A, N
11/11/82 R.O. Gale P, category 1/1,
 9/1/83 B/C(R), B p & q
11/11/82 R.A. Elmer Negative (for P)
11/26/84 B/C(R), B
11/11/82 E.N. Sargent Negative (for P)
 1/21/85 B/C(R), B
 
 
 8
 A series of arterial blood gas tests were also performed on the decedent shortly before his death and were summarized by the ALJ as follows:
 
 Recorded Recorded Qualifying
 
 9
 Date Physician pC02 p02 p02
 
 
 10
 11/1118/82 Dodds 34 57 66
 
 
 11
 (Hospitalization) Dodds 41 56 60
 
 
 12
 11/18/82 Dodds 40 53 60
 
 
 13
 (Hospitalization)
 
 
 14
 11/22/82 Dodds None given 47 (cannot
 
 
 15
 (Hospitalization) compute)
 
 
 16
 In addition to the x-ray and blood gas evidence, decedent's death certificate lists the miner's immediate cause of death as "chronic respiratory insufficiency" resulting from "pulmonary fibrosis."
 
 
 17
 In a medical report dated April 6, 1987, Dr. William West concluded that the deceased miner did have pneumoconiosis, "type A," and that decedent's death "was directly caused by coal workers' pneumoconiosis." It must be noted, however, that Dr. West never met the decedent or his wife, the petitioner. Dr. West's analysis and conclusion are based solely upon records supplied to him by the claimant's attorney. Furthermore, there is no indication in Dr. West's report that he had been informed of the decedent's prolific smoking habit. In fact, decedent's smoking habit is conspicuously absent from all the medical evidence presented in this petition.
 
 
 18
 Because the ALJ determined that the positive x-ray evidence was at least as equally probative as the negative x-ray evidence, he applied the "true doubt rule" and concluded that the deceased miner had clinical, but not "complicated," pneumoconiosis on the date of his death. The ALJ concluded, however, that the pneumoconiosis did not cause decedent's death, and that it was not even a contributing cause or factor leading to the miner's death. The ALJ denied survivors' benefits to the claimant, noting that the medical records indicated a failure by the doctors to consider decedent's smoking habit. Claimant filed a timely appeal with the Benefits Review Board.
 
 
 19
 The Board rejected claimant's argument that "pulmonary fibrosis," as listed on the decedent's death certificate, comes within the regulatory definition of pneumoconiosis set forth in 20 C.F.R. Sec. 718.201 and therefore affirmed the ALJ's denial of benefits. The Board noted that the definition set forth in the regulations specifies "massive pulmonary fibrosis" and "progressive massive fibrosis." After affirming the ALJ's discrediting of Dr. West's medical report, the Board concluded that the ALJ properly weighed the chest x-ray evidence. The Board thereby affirmed the ALJ's finding of no complicated pneumoconiosis. The Board therefore concluded that an invocation of the irrebuttable presumption of death due to pneumoconiosis, pursuant to 20 C.F.R. Sec. 718.304, was not dictated.
 
 
 20
 Claimant timely petitioned this court for review of the Board's decision.
 
 II.
 
 21
 This court has jurisdiction on appeal to review the Benefits Review Board's final order pursuant to 33 U.S.C. Sec. 921(c), incorporated by, 30 U.S.C. Sec. 932(a). We scrutinize Board decisions for errors of law and for adherence to the substantial evidence test governing the Board's review of the ALJ's factual determinations:
 
 
 22
 This court's review of a decision of the Benefits Review Board is limited. 'The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations.' The Board's function is similarly limited. It is not empowered to engage in a de novo review but rather is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record viewed as a whole. 33 U.S.C. Sec. 921(b)(3); 20 C.F.R. Sec. 802.301.
 
 
 23
 Director, O.W.C.P. v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (citations omitted). Furthermore, it is the ALJ who makes credibility determinations and determines the weight to be accorded the evidence. Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985).
 
 
 24
 Petitioner has the burden of proving that the miner had pneumoconiosis, that he was totally disabled by or died due to pneumoconiosis, and that his pneumoconiosis arose out of his coal mine employment. Grant v. Director, O.W.C.P., 857 F.2d 1102, 1105 (6th Cir.1988) (citing Farmer v. Mathews, 584 F.2d 796, 798 (6th Cir.1978)). Part 718 of the regulations, "Standards for Determining Coal Miners' Total Disability or Death Due to Pneumoconiosis," applies to the instant petition because the decedent had no claim pending under the Act and this claim was filed after March 31, 1980. Accordingly, 20 C.F.R. Sec. 718.1 dictates that benefits are payable on survivors' claims filed on or after January 1, 1982 only when the miner's death was due to pneumoconiosis, as defined in 20 C.F.R. Sec. 718.201.
 
 
 25
 The applicable criteria for determining whether a miner's death occurred as a result of pneumoconiosis is contained in 20 C.F.R. Sec. 718.205(c) which provides:
 
 
 26
 (c) For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met:
 
 
 27
 (1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, or
 
 
 28
 (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
 
 
 29
 (3) Where the presumption set forth at Sec. 718.304 is applicable.
 
 
 30
 Regarding 20 C.F.R. Sec. 718.205(c)(3), the observed p02 values of the blood gas studies fell below the qualifying values listed in Appendix C of Part 718.[1] Furthermore, the ALJ found that the preponderance of the chest x-ray evidence failed to establish the existence of complicated pneumoconiosis, thereby precluding invocation of the irrebutable presumption of death due to pneumoconiosis pursuant to 20 C.F.R. Sec. 718.304. See Adams v. Director, O.W.C.P., 886 F.2d 818 (6th Cir.1989). This court agrees. Decedent's x-rays were examined by seven different physicians and only one physician noted one or more large opacities that he classified as Category A. This doctor's interpretation is in stark contrast to the readings of the final two physicians to interpret the x-rays. The physicians, both "B" readers, interpretted the decedent's x-rays as negative for pneumoconiosis. We find that the ALJ correctly determined that the preponderance of the x-ray evidence failed to establish the existence of complicated pneumoconiosis, thereby precluding an irrebutable presumption of death due to pneumoconiosis pursuant to 20 C.F.R. Sec. 718.304.
 
 
 31
 Noting that the death certificate lists the cause of decedent's death as "pulmonary fibrosis," petitioner next argues that this conclusively establishes that her husband's death was due to pneumoconiosis. The ALJ rejected this argument, holding that "pulmonary fibrosis" does not come within the definition of pneumoconiosis set forth at 20 C.F.R. Sec. 718.201. We agree with the ALJ's determination. Section 718.201 provides:
 
 
 32
 For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.
 
 
 33
 20 C.F.R. Sec. 718.201 (emphasis added); see also 30 U.S.C. Sec. 902(b) (definition of pneumoconiosis).
 
 
 34
 Contrary to petitioner's argument, "pulmonary fibrosis" is not specifically included in the definition of pneumoconiosis. Though the definition of pneumoconiosis provided in Sec. 718.201 is not limited to those diseases specifically listed, "pulmonary fibrosis" may be deemed to fall within the definition of pneumoconiosis only if other supporting medical evidence establishes a significant relationship to coal mine dust. Petitioner has not provided supporting medical evidence. Furthermore, though this claim was initiated soon after the decedent's death, no autopsy was performed. The ALJ was therefore forced to render a decision based solely upon widely conflicting x-ray interpretations, a death certificate, and limited lay testimony.
 
 
 35
 The ALJ, weighing all the evidence presented, found the death certificate inconclusive regarding any part pneumoconiosis may have played in the decedent's death. The ALJ therefore ruled "pulmonary fibrosis" outside the definition of Sec. 718.201. This court is bound to uphold the ALJ's factual findings even if it disagrees, so long as the factual findings are supported by substantial evidence. Engle v. Director, O.W.C.P., 792 F.2d 63, 64 (6th Cir.1986). We conclude that the ALJ's determination regarding the "pulmonary fibrosis" notation on the death certificate was supported by substantial evidence. The Supreme Court supports this position:
 
 
 36
 According to the Surgeon General, pneumoconiosis is customarily classified as "simple" or "complicated." Simple pneumoconiosis, ordinarily identified by x-ray opacities of a limited extent, is generally regarded by physicians as seldom productive of significant respiratory impairment. Complicated pneumoconiosis, generally far more serious, involves progressive massive fibrosis as a complex reaction to dust and other factors ... and usually produces significant pulmonary impairment and marked respiratory disability.
 
 
 37
 Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7 (1976) (emphasis added).
 
 
 38
 Petitioner also argues the the ALJ erred by not crediting Dr. West's April 6, 1987 medical report which concluded that "the only reasonable cause for the fibrosis would seem to be pneumoconiosis of the coal mine variety," adding that "I can only conclude that his death was directly caused by coal workers' pneumoconiosis." The ALJ discredited Dr. West's medical report because the doctor had never met the decedent or his wife, did not consider the effects of 54 years of smoking, and did not consider any other factors in decedent's life including his years spent farming.
 
 
 39
 A physician's opinion must be documented and reasoned to constitute substantial evidence in support of a finding. Director, O.W.C.P. v. Rowe, 710 F.2d at 255. Dr. West's report was neither. These requirements are particularly true where the significance of a miner's extensive smoking history is not considered when determining the etiology of the pulmonary disease. Grant v. Director, O.W.C.P., 857 F.2d at 1106. The significance of the smoking is heightened because the earliest respiratory symptoms manifested themselves in 1968, thirty-seven years after the decedent stopped mining, and the first medical treatment the miner received for his breathing condition was in 1982, approximately fifty-one years after leaving the mine:
 
 
 40
 Any persuasive value that this argument regarding causation may have, however, is greatly reduced by Mr. Grant's history as a chronic smoker of forty-five years who, in the year of his death, was smoking a pack and a half daily. The possibility that any pulmonary disease from which Grant suffered arose from smoking rather than from coal mine employment is increased by the evidence Grant did not begin receiving treatment for breathing problems until 1979, thirty-seven years after he had ceased his coal mine employment.
 
 
 41
 Id.
 
 
 42
 This court concludes, based on the foregoing evidence, that the ALJ could have rationally found that petitioner had not submitted evidence establishing a causal relationship between the decedent's coal mine employment and his pneumoconiosis. Furthermore, we conclude that the ALJ could have rationally found that petitioner had not submitted evidence establishing a causal relationship linking the pneumoconiosis to the decedent's death. We conclude that the ALJ's findings were supported by substantial evidence. For the foregoing reasons, the Board's Order denying claimant benefits is AFFIRMED.
 
 
 
 [1]
 "Blood-gas studies are performed to detect an impairment in the process of alveolar gas exchange. This defect will manifest itself primarily as a fall in arterial oxygen tension either at rest or during exercise." 20 C.F.R. Sec. 718.105. A miner who meets the following medical specifications shall be found to be totally disabled, in the absence of rebutting evidence, if the applicable value specified in the following table is met (for arterial blood-gas studies performed at test sites up to 2,999 feet above sea level):
 Arterial pC02 (mm Hg) Arterial p02 equal to or less than (mm Hg)
-----------------------------------------------------------------
25 or below 75
26 74
27 73
28 72
29 71
30 70
31 69
32 68
33 67
34 66
35 65
36 64
37 63
38 62
39 61
4049 60
Above 50 Any value
-----------------------------------------------------------------
 
 
 [20]
 C.F.R. 718, App. C, Sec. 1