**Fred KYLE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondents.**

**No. 85–3535.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1986.

Decided May 18, 1987.

---

Julian N. Henriques (argued), Legal Asst. Foundation of Chicago, Jean Goodwin, Legal Asst. Foundation, Chicago, Ill., for petitioner.

J. Michael O'Neill, Sylvia T. Kaser (argued), Washington, D.C., for respondents.

Before MERRITT, GUY and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Fred Kyle seeks review of an order of the Benefits Review Board of the United States Department of Labor which affirmed the decision of the Administrative Law Judge to deny him benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*

In essence, Kyle's appeal is grounded on two contentions—first, that the A.L.J. erred by failing to consider his entitlement to an "interim presumption" of disability under 20 C.F.R. § 410.490 in connection with his claim for benefits, and second, that when that "interim presumption" is utilized he is entitled to black lung benefits as a matter of law. In addition, Kyle disputes some of the factual findings of the A.L.J., but, as our review of the record leads us to conclude that these findings are supported by substantial evidence, they may not be set aside on appeal. *Moore v. Califano,* 633 F.2d 727, 729 (6th Cir.1980). However, because we agree with Kyle's first contention, we reverse the Board's decision and remand for further proceedings.

On February 15, 1980, petitioner Kyle filed his claim for benefits. This claim was

subsequently denied and Kyle requested a hearing. This hearing was held on May 25, 1982, and the A.L.J. made the following findings of fact: that Kyle was a coal miner for approximately eight and one-half years, ending in 1951; that he had pneumoconiosis which was depicted by X-ray; that blood gas and pulmonary function studies were within normal limits; that S.M. Hessl, M.D., examined Kyle in May 1980 and diagnosed chronic bronchitis and coal miner's pneumoconiosis arising out of his coal mine employment; that Dr. Hessl also found Kyle had an AMA Class III respiratory impairment, arteriosclerotic heart disease and right bundle branch block; and that Kyle's file was referred to a medical consultant, who concluded that he was not totally disabled from pneumoconiosis and that any respiratory disability that he had was the result of smoking. The A.L.J. determined that Kyle had not met his burden on proving that he was totally disabled from pneumoconiosis, and that he was therefore not entitled to black lung benefits.

■ In order to be eligible for benefits under the Act, a miner must demonstrate that he is totally disabled due to pneumoconiosis. 30 U.S.C. §§ 901(a), 902(b). To aid claimants in meeting this burden, the agencies which have administered the benefits program have provided a number of presumptions. The presumption at issue here is the one found in 20 C.F.R. § 410.490, which states, in part:

(b) *Interim presumption.* With respect to a miner who files a claim for benefits before July 1, 1973 ... such miner will be presumed to be totally disabled due to pneumoconiosis ... if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis ...

. . . .

(2) The impairment established in accordance with paragraph (b)(1) of this section arose out of coal mine employment. . . .

. . . .

(c) *Rebuttal of presumption.* The presumption in paragraph (b) of this section may be rebutted if:

(1) There is evidence that the individual is, in fact, doing his usual coal mine work or comparable and gainful work. . . .

Because Kyle's claim was filed long after July 1, 1973, it would ?m that he would not be able to claim ? benefit of this presumption. Howe? Kyle contends that he is entitled to the presumption in view of a 1977 amendment to the Black Lung Benefits Act:

(f)(1) The term "total disability" has the meaning given it by regulations of ... the Secretary of Labor ... except that—

. . . .

(2) Criteria applied by the Secretary of Labor in the case of—

. . . .

(C) any claim filed on or before the effective date [March 31, 1980] of regulations promulgated under this subsection by the Secretary of Labor;

*shall not be more restrictive than the criteria applicable to a claim filed on June 30, 1973*, whether or not the final disposition of any such claim occurs after the date of such promulgation of regulations by the Secretary of Labor.

30 U.S.C. § 902(f)(2) (emphasis added).

Kyle argues that the effect of the "shall not be more restrictive" language of this amendment is to require that his case be decided in light of legal criteria in place on June 30, 1973, and that includes 20 C.F.R. § 410.490. Because the A.L.J. found that an X-ray established the existence of pneumoconiosis, and Dr. Hessl concluded that Kyle's pneumoconiosis arose out of coal mining, it is apparent that, had the A.L.J. considered Kyle's claim in the light of Section 410.490 and also concluded that Dr. Hessl's report established causation, then Kyle would have been entitled to the presumption of total disability due to pneumoconiosis.

■ However, the Department of Labor contends that Kyle failed to raise this issue

at any stage of the proceedings below, and he is therefore precluded from raising it before this court for the first time.

While an appellate court generally will not address an issue which was not presented below, an exception is made when raising the issue would have been futile. *See, e.g., Youakim v. Miller,* 425 U.S. 231, 235, ██ S.Ct. 1399, 1402, 47 L.Ed.2d 701 (19██ *Penland v. Warren County Jail,* 7██ █.2d 524, 531 n. 6 (6th Cir.1985). At th██ ██me of the A.L.J.'s decision, the Board had rejected the application of Section 410.490 sought by Kyle. *See Lynn v. Director, Office of Workers' Compensation Programs,* 3 BLR 1–125, 126 (1981). The Board has also consistently held that it will not allow an A.L.J. to consider 20 C.F.R. § 410.490 in connection with claims filed after July 1, 1973, unless that consideration is required by the court of appeals of that particular circuit. *See, e.g., Kimmel v. Diamond Coal Co.,* 6 BLR 1–288, 291–93 (1983). In *Kimmel,* which was decided almost two years before the Board's decision in this case, the Board held that it would not apply Section 410.490 to claims arising in the Sixth Circuit which were filed after July 1, 1973. Accordingly, it would have been futile for Kyle to raise the argument.

The department next argues that, because Kyle's claim was not filed before July 1, 1973, the language of Section 410.-490 itself precludes his reliance upon its presumption. It disputes Kyle's contention that the "shall not be more restrictive" language of the 1977 amendment to 30 U.S.C. § 902(f)(2) revives the application of the Section 410.490 presumption to him, since the department contends that the language refers not to evidentiary or adjudicatory criteria such as length of service, but only to medical criteria. It further maintains that the congressional mandate was complied with in the promulgation of 20 C.F.R. § 727.203, which is the regulation governing entitlement to an interim presumption, in later filed claims like Kyle's. That regulation establishes medical standards similar to those in Section 410.490, but it also includes an additional requirement that the miner have ten years of coal

mine employment before he can qualify for the presumption of total disability due to pneumoconiosis.

While courts often defer to an interpretation given a statute by an agency charged with its administration, *see, e.g., United States v. Riverside Bayview Homes,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), this deference is tempered by the role of the courts as "the final authorities on issues of statutory construction ... [who] 'are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'" *Federal Maritime Commission v. Seatrain Lines,* 411 U.S. 726, 745–46, 93 S.Ct. 1773, 1784–85, 36 L.Ed.2d 620 (1973) (citations omitted). Manifestly, the term "criteria" is subject to numerous possible interpretations. Accordingly, we need to examine its utilization by the Congress, in the context of other statutory language, and of the history and purpose of the Black Lung Benefits Act, in order to determine whether it should be assigned the narrow meaning urged by the department. *See Local 705, International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 565–66, 99 S.Ct. 790, 799–800, 58 L.Ed.2d 808 (1979); *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979).

An examination of legislative history reveals that adopting such a narrow meaning of the term "criteria" would be inconsistent with the purpose of the Act as articulated by several congressional sources. The general purpose of both the 1972 and 1978 amendments to the Act appears to have been to liberalize the standards under which black lung benefits were being awarded at the time. *See* S.Rep. No. 743, 92d Cong.2d Sess. 17, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2305, 2320–21; H.R.Rep. No. 151, 95th Cong.2d Sess. 4, *reprinted in* 1978 U.S.Code Cong. & Ad. News 237, 240. The Third Circuit, in *Echo v. Director, Office of Workers' Compensation Programs,* 744 F.2d 327, 330 (3d Cir. 1984), exhaustively reviewed congressional

purpose in regards to the Act and concluded that:

> The legislative history of the Black Lung Program demonstrates a clear pattern. Congress passed a statute intended to provide wide-spread benefits to miners disabled by black lung disease. The benefits, while never very high, were intended to be liberally awarded. Administrative practice, however, did not comport with legislative intent, and twice Congress was impelled to specify its intentions more clearly, "in order to insure as broad coverage as possible." (Citation and footnote omitted.)

Examination of the language of the statute also leads us to reject the department's interpretation of the term "criteria." The department insists that its reading of the term is correct because a sentence found in the subsection immediately preceding 30 U.S.C. § 902(f)(2) states that "the Secretary of Labor ... shall establish *criteria for all appropriate medical tests* under this subsection which accurately reflect total disability in coal miners" [30 U.S.C. § 902(f)(1)(D) (emphasis added)], and the use of the word "criteria" in the following subsection must be parallel to its previous use. To further buttress this contention, the department cites the opinion in *Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*, 778 F.2d 358, 362 (7th Cir.1985).

We find that argument less than convincing, since use of the word "criteria" in the previous subsection was specifically limited to the context of "medical tests," while omission of that restrictive terminology in the subsequent subsection only serves to indicate a general usage of the word "criteria" was intended, unencumbered by the limiting terminology. Obviously, Congress did not qualify its use of the term "criteria" in one subsection, but did in another. Since Congress is presumed to act intentionally when it includes particular language in one provision of a statute, but omits that language from another provision, we conclude that "criteria" should be accorded the broader meaning. *See, e.g., Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

Our view of the statute is not necessarily in conflict with *Peabody Coal*, since the reference to "medical criteria" in that opinion may be viewed as *dictum* since it was not necessary to the court's holding that the Secretary of Labor did not exceed his authority in promulgating the Section 727.-203(a) interim presumption.

We also note that the department's argument, that its position is supported by the legislative history of 30 U.S.C. § 902(f)(2), was made and rejected in *Halon v. Director, Office of Workers' Compensation Programs*, 713 F.2d 21 (3d Cir.1983), and *Coughlan v. Director, Office of Workers' Compensation Programs*, 757 F.2d 966, 968 (8th Cir.1985). On this point, the *Halon* court held that:

> The plain language of the statute does not suggest that Congress intended any such modification of the generic term "criteria." The legislative history is, at best, equivocal. References in debate to medical criteria are not dispositive.... The occasional specific mention of medical criteria does not support an inference that non-medical criteria were to be excluded. Other remarks in the debate suggest that the criteria referred to include adjudicatory standards as well as medical standards.

*Id.* at 24. (Citation omitted.)

Our review of the legislative history leads us to the same conclusion. Accordingly, we see no reason to place ourselves at odds with the position already taken by the Third and Eighth Circuits on the issues raised by this appeal.

■ Nor does that conclusion conflict with our opinion in *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485 (6th Cir.1985), as suggested by the department.

In *Ramey*, this court was concerned with what specific evidence was required to rebut a presumption of pneumoconiosis under regulations promulgated pursuant to Part C of the Black Lung Act. *See* 20 C.F.R. § 727.203(a). Specifically, *Ramey* held that, even though vocational and medical evidence had been required to rebut the Part B presumption, the Secretary's pre-

sentation of medical evidence alone would be sufficient to rebut the Part C presumption. The court reasoned that such a holding was not inconsistent with the no "more restrictive" language because the exact evidence necessary to rebut the presumption was not permanently fixed by the language in 30 U.S.C. § 902(f)(2), which establishes the no "more restrictive" standard.

*Ramey* should not be read to suggest that the Part B presumptions no longer apply. On the contrary, *Ramey* should be interpreted to hold that, although the Part B presumptions are preserved, under certain limited circumstances, the specific evidence necessary to rebut those presumptions may be altered over time.

■ In the case before us, the question is whether the Part B criteria to invoke the presumption of disability are applicable. *Ramey* is not controlling in this context. Since the issue is one of criteria, as opposed to mere evidence, 30 U.S.C. § 902(f)(2) mandates that we apply the criteria set forth in Part B of the regulations. Accordingly, we must remand for a determination of whether the claimant can meet the Part B criteria.

The Board's decision is reversed and this cause is remanded in order that Kyle's claim to the benefit of an interim presumption may be considered in the context of 20 C.F.R. § 410.490.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the issue of Kyle's entitlement to an "interim presumption" of disability under 20 C.F.R. § 410.490 is properly before us, but respectfully disagree with their resolution of this issue.

I would read the statute as the Secretary suggests, as requiring that no less restrictive *medical* criteria be incorporated into the regulations. In support of my conclusion, I would offer the reasoning of the dissent in *Halon v. Director, Office of Workers' Compensation Programs*, 713 F.2d 21 (3rd Cir.1983). In *Halon*, Judge Weis made a thorough analysis of the purpose and legislative history of the statutory language in question, and I find this analysis more persuasive than that of the majority here.