**Freda M. GRANT, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPT. OF LABOR, Respondent.**

No. 87–3674.

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 12, 1988.

Decided Sept. 28, 1988.

---

Freda M. Grant, Dayton, Ohio, pro se.

Karen Lynne Baker, Office of the Solicitor, U.S. Dept. of Labor, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for respondent.

Before KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Petitioner Freda Grant appeals from the Benefits Review Board's affirmance of an administrative law judge's (ALJ's) denial of her application for black lung survivor's benefits. This appeal presents questions of whether substantial evidence supported the ALJ's conclusion and whether the ALJ applied the proper regulations in considering Grant's application for benefits. For the reasons that follow, we affirm.

William H. Grant, petitioner's deceased husband, was born in 1915 and worked in the Nation's coal mines for a total of nine years prior to 1942. From 1942 to 1976, he was employed at Leland Electric doing electrical repair and armature work on commercial and Air Force planes. The former miner filed an application for black lung benefits in March 1979, thirty-two years after last working in coal mines, only three months before his death in June 1979. Freda Grant, the deceased miner's widow, filed her application for survivor's benefits on June 27, 1979. This claim was denied initially and on reconsideration by the Office of Workers' Compensation Programs.

After a hearing, the ALJ issued a decision denying benefits, concluding that the evidence established less than ten years of coal mine employment. Because the claimant therefore failed to qualify for benefits under the interim presumption contained at 20 C.F.R. § 727.203, the ALJ proceeded to consider Mrs. Grant's application under Part 410, Subpart D of the regulations. 20 C.F.R. § 410.401 *et seq.* In applying the Part 410, Subpart D regulations, the ALJ relied on the Board's decision in *Muncy v. Wolf Creek Collieries Coal Co.*, 3 BLR 1–627 (1981).

Although the ALJ found that x-ray evidence established the existence of pneumoconiosis and was supported by autopsy evidence, he concluded that petitioner had failed to meet her burden of proof by showing that her husband had been totally disabled by pneumoconiosis or that his death was due to pneumoconiosis. In addition, the ALJ concluded that Mrs. Grant had failed to establish that the pneumoconiosis arose out of her husband's coal mine employment. Finally, the ALJ concluded that even if the claim were considered under the presumption contained at 20 C.F.R. § 410.490, petitioner would not be entitled to benefits because she still would not have presented competent evidence that her late husband's pneumoconiosis was causally linked to his coal mine employment.

The Benefits Review Board affirmed the ALJ's decision based upon its conclusion that substantial evidence supported the ALJ's conclusion that petitioner had failed to prove the existence of a totally disabling pulmonary impairment. Mrs. Grant appeals the Board's decision to this court.

The medical evidence in the record is relatively sparse; it consists of x-ray readings, a blood gas study, a pulmonary func-

tion study, several physicians' reports, and autopsy reports. The ALJ adequately summarized the x-ray and test findings as follows:

### X-ray Studies

| DATE | EXHIBIT NO. | PHYSICIAN/ QUALIFICATIONS | READ'G | STANDARDS |
|------|-------------|---------------------------|--------|-----------|
| 3/1/67 | Clt.Ex. 11 | Straughan/Board certified radiologist and B–reader | 1/0, p | Fair Technical quality |
| 3/1/67 reread 1/25/84 | Dir.Ex. 32 | Cole/Board certified radiologist and B–reader | 1/0, q, s | Acceptable |
| 12/14/76 | Clt.Ex. 1 | Straughan/Board certified radiologist and B–reader | 1/0, p | Slightly under-penetrated |
| 12/14/76 reread 1/25/84 | Dir.Ex. 33 | Cole/Board certified radiologist and B–reader | 1/1, q, s | Acceptable |
| 4/23/79 reread 1/14/80 | Dir.Ex. 21 | Gordonson/Board certified radiologist and B–reader | | Unreadable |
| 5/7/79 reread 2/12/80 | Dir.Ex. 22 | Green/Board certified radiologist and B–reader | | Unreadable |

### Pulmonary Function Studies

| DATE | EXHIBIT NO. | DOCTOR | HGT | FEV | MVV | STANDARDS |
|------|-------------|--------|-----|-----|-----|-----------|
| 4/23/79 | Dir.Ex. 17 | Schuster | 70" | 1.95 | 79 | Cooperative, Tracings attached |

Interpretation of Dr. Schuster: Normal pulmonary function test.
Validation of Dr. Long: Vents are acceptable.

### Blood Gas Studies

| DATE | EXHIBIT NO. | $pCO_2$ | $pO_2$ |
|------|-------------|---------|--------|
| 4/23/79 | Dir.Exs. 18, 20 | 33.0 | 75.0 |

Comment of Dr. Schuster: No abnormal findings.

Several brief letters from Mr. Grant's treating physician, Dr. Norbert Kosater, are also in the record. The first, dated February 21, 1977, without stating the cause of disability, stated that Grant was totally and permanently disabled for purposes of the miner's income tax return. In a letter of March 2, 1981, Dr. Kosater stated that Grant had been under treatment since May 1979 for cough and shortness of breath. The letter additionally stated that chest x-rays had shown some changes consistent with emphysema or chronic bronchitis, but that additional pulmonary testing had not been accomplished prior to Grant's death. Finally, in a letter dated February 1, 1983, Dr. Kosater noted that Grant's autopsy had shown extensive evidence of pneumoconiosis. Dr. Kosater reported that prior to his death, Grant had been seeking social security disability payments "for multiple other problems." He noted that he was aware of Grant's problems with dyspnea and coughing and that x-ray evidence had suggested emphysema and chronic lung changes as early as 1961.

The other physician who examined Mr. Grant was Dr. Benjamin Schuster. After seeing Grant on April 23, 1979, Dr. Schuster reported that while Grant complained of shortness of breath, he had found no evidence of pulmonary disease. The results of both arterial blood gas studies and pulmonary function tests were normal. Dr. Schuster concluded: "He really has no significant pulmonary complaint despite the fact he has been a chronic smoker for about 45 years. I find no evidence of black lung disease in this gentleman."

The Coroner's Office report of Grant's autopsy described the lungs as having a "marked amount of anthrocotic streaking" and marked emphysema. The report, however, stated the cause of death was cerebral anoxia due to exsanguinating hemorrhage resulting from the spontaneous rupture of an aortic abdominal aneurysm.

■ Our review in this case is limited to determining whether the outcome below was supported by substantial evidence and was reached in conformance with the applicable law. *York v. Benefits Review Board,* 819 F.2d 134, 136 (6th Cir.1987). As a preliminary matter, we find that the ALJ's determination that Mrs. Grant has not proven her entitlement to survivor's benefits under the Part 410, Subpart D regulations is supported by substantial evidence. Under those regulations, petitioner had the burden of proving that the miner had pneumoconiosis, that he was totally disabled by or died due to pneumoconiosis, and that his pneumoconiosis arose out of his coal mine employment. *See Farmer v. Mathews,* 584 F.2d 796, 798 (6th Cir.1978).

We find no error in the ALJ's finding that the record contained insufficient evidence to establish total disability due to pneumoconiosis under the Part 410 standards. Dr. Kosater's letters of 1977 and 1983 provide the only medical evidence indicating that Grant may have been disabled. The 1977 letter, however, identifies no cause of Grant's disability. Moreover, Dr. Kosater's 1981 letter indicates that he did not start treating Grant for breathing problems *until 1979.* Similarly, while Dr. Kosater's 1983 letter notes autopsy evidence of pneumoconiosis, it states that prior to his death Grant was seeking social security disability benefits "for multiple *other* problems" (emphasis added). Therefore, Dr. Kosater's letters do not demonstrate that at the time of his death Grant was totally disabled *due to pneumoconiosis.* Dr. Schuster's report finding "no significant pulmonary complaint" bolsters the conclusion that Grant was not disabled by any type of lung disease. Based on this medical evidence, the ALJ rationally could have found that petitioner failed to establish that Mr. Grant was totally disabled due to pneumoconiosis.[1]

■ The more difficult question presented by this appeal is whether the ALJ, once he concluded that Mrs. Grant had failed to establish eligibility under 20 C.F.R. § 727.203's interim presumption, should have considered the claim under the new Part 718 permanent regulations, 20 C.F.R. § 718.1 *et seq.,* rather than under the old part 410 regulations.[2] The Director argues that the ALJ should have applied the Part 718 regulations, relying on the following language of § 727.203(d):

> *Failure of miner to qualify under the presumption in paragraph (a) of this section.* Where eligibility is not established under this section, such eligibility may be established under part 718 of this subchapter as amended from time to time.

Thus, the Director asserts, because the hearing in this case occurred after the effective date of the new Part 718 regulations, the ALJ should have applied those regulations to petitioner's claim.

The Director refers us to *Caprini v. Director, OWCP,* 824 F.2d 283, 284 (3d Cir.1987) and *Strike v. Director, OWCP,* 817 F.2d 395, 406 n. 9 (7th Cir.1987), decisions finding the Part 718 regulations applicable to claims administratively adjudicated after the effective date of those regulations. These cases, however, are not persuasive in the instant case because they do not take into account the impact of our decision in *Kyle v. Director, OWCP,* 819 F.2d 139 (6th Cir.1987).

In *Kyle* we held that when, as in this case, the § 727.203 interim presumption is unavailable because the miner worked less

---

1. Petitioner does not contest the ALJ's finding that her husband's death was not due to pneumoconiosis.

2. The part 727 regulations are temporary regulations promulgated under the Black Lung Benefits Reform Act of 1977. 20 C.F.R. § 727.1. Subpart C of those regulations, including the interim presumption established by § 727.203, is to be applied to new claims filed prior to March 31, 1980, the effective date of the new permanent regulations contained in Part 718.

The criteria applied to claims filed before this effective date are statutorily required to be "no more restrictive" than the criteria applicable to claims filed before June 30, 1973. 30 U.S.C. § 902(f)(2). The Part 727 regulations also refer to Part 718 "as amended from time to time." 20 C.F.R. § 727.203(d). When the Secretary promulgated the temporary Part 727 regulations, Part 718 incorporated by reference the Part 410 regulations.

than ten years in the coal mines, the ALJ should apply the presumption contained at 20 C.F.R. § 410.490 to the claim. *Kyle* was decided on the basis of 30 U.S.C. § 902(f)(2)'s requirement that the criteria applied by the Secretary to claims filed before the effective date of the Part 718 permanent regulations "shall not be more restrictive than the criteria applicable to a claim filed on June 30, 1973...." Section 410.490's presumption is expressly applicable to claims filed before July 1, 1973, and is similar to § 727.203's presumption. The critical difference between the two regulations is that the § 410.490 presumption is available to a miner who has less than ten years of coal mine employment. Thus, *Kyle* interprets § 902(f)(2) as requiring an ALJ to apply the § 410.490 presumption to a claim filed before the effective date of the new permanent regulations if the claimant cannot avail himself of § 727.203's presumption because of the "more restrictive" ten years requirement. *Accord Coughlan v. Director, OWCP*, 757 F.2d 966 (8th Cir. 1985); *Halon v. Director, OWCP*, 713 F.2d 21 (3d Cir.1983); *but see Strike v. Director, OWCP*, 817 F.2d 395 (7th Cir.1987).

In our opinion, *Kyle's* holding applies directly to this case and forestalls any controversy in this case over whether the old Part 410 regulations or the new permanent Part 718 regulations are properly applicable, by way of § 727.203(d)'s incorporation provision, to claims filed prior to, but heard by the agency subsequent to, the effective date of the new permanent regulations. We read *Kyle* as requiring that whenever the ten-year coal mine employment requirement renders § 727.203's presumption unavailable for a claim filed prior to March 31, 1980, the ALJ should apply the less restrictive presumption contained in § 410.490. Accordingly, the ALJ in the instant case should have considered Mrs. Grant's claim under that provision.

■ Although the ALJ analyzed Mrs. Grant's claim primarily under the Part 410, Subpart D regulations, he briefly considered the claim under § 410.490's presumption:

Section 410.490 provides an interim presumption of totally disabling pneumoconiosis where a miner with less than 10 years of coal mine employment has a positive x-ray reading for pneumoconiosis and where such impairment arose out of employment in coal mines. As discussed above, the x-ray evidence establishes the existence of pneumoconiosis but the claimant has failed to establish that the pneumoconiosis arose out of coal mine employment. On that basis, the claimant is not entitled to benefits under Section 410.490.

Section 410.490(b)(2) establishes as a prerequisite for invoking the presumption that "[t]he impairment ... arose out of coal mine employment (see §§ 410.416 and 410.-456)." Section 410.456, which applies in the case of a survivor's claim, requires that if the coal miner had less than ten years coal mine employment, "the claimant must submit the evidence necessary to establish that the pneumoconiosis from which the deceased miner suffered, arose out of employment in the Nation's coal mines." 20 C.F.R. § 410.456(b).

The ALJ found an "absence of any ... evidence" that Mr. Grant's pneumoconiosis arose out of coal mine employment. Petitioner argues that her husband's subsequent employment in electrical repairs would not have exposed him to coal dust and that this circumstance may be considered "good evidence that his pneumoconiosis arose from his coal mine employment." *Maxey v. Califano*, 598 F.2d 874, 876 n. 3 (4th Cir.1979). Any persuasive value that this argument regarding causation may have, however, is greatly reduced by Mr. Grant's history as a chronic smoker of forty-five years who, in the year of his death, was smoking a pack and a half daily. The possibility that any pulmonary disease from which Grant suffered arose from smoking rather than from coal mine employment is increased by the evidence Grant did not begin receiving treatment for breathing problems until 1979, thirty-seven years after he had ceased his coal mine employment.

Based on the foregoing evidence, we conclude that the ALJ rationally could have

found that petitioner had not submitted evidence establishing a causal relationship between the miner's coal mine employment and his pneumoconiosis. Therefore, substantial evidence supports the ALJ's finding that petitioner is not entitled to benefits under § 410.490's presumption.[3] In addition, we AFFIRM the Secretary's denial of survivor's black lung benefits in this case.

---

**3.** Petitioner's failure to present evidence establishing causation under § 410.490(b)(2) means that the interim presumption was never in-

voked. Therefore, we need not consider the Director's argument regarding the methods available for rebutting § 410.490's presumption.