**Charlie BROYLES, Petitioner,**

v.

**DIRECTOR, OFFICE of WORKERS' COMPENSATION PROGRAMS, United States Department of Labor and Benefits Review Board of the United States Department of Labor, Respondents.**

**Lisa COLLEY, Petitioner,**

v.

**BENEFITS REVIEW BOARD OF the UNITED STATES DEPARTMENT OF LABOR and Director, Office of Workers' Compensation Programs of the United States Department of Labor, Respondents.**

Nos. 86–1091, 86–3153.

United States Court of Appeals, Fourth Circuit.

Sept. 3, 1992.

Before CHAPMAN, Senior Circuit Judge, and W. EARL BRITT and JOHN A. McKENZIE, District Judges (sitting by designation).

## ORDER

This matter is before the court upon application of the claimants' attorneys for fees and expenses covering work performed by them in connection with the appeal to the United States Court of Ap-

peals for the Fourth Circuit in the consolidated cases of *Broyles v. Benefits Review Board* (86–1091) and *Colley v. Benefits Review Board* (86–3153), 824 F.2d 327 (1987), *aff'd sub nom. Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). In our opinion, which covered both cases, we reversed the prior decisions of the Benefits Review Board so as to give these black lung claimants the benefit of a more liberal interpretation of the interim presumption found in 20 C.F.R. § 410.490. The Supreme Court affirmed, and on remand to the Department of Labor separate orders were entered awarding benefits to the claimants, Broyles and Colley. Therefore, the claimants prevailed in this litigation, and they have now applied for reasonable attorney's fees and expenses pursuant to 33 U.S.C. § 928.

■ The first petition for fees came from attorneys Hershman, Reott, Henriques, Lehrer, and Munzel. They seek fees of $76,795.94 and expenses of $2,658.96 in connection with the appeal to our court. While we were considering this grossly excessive application, we were directed by the Supreme Court to consider and act upon the fee petition of the attorneys for services in these cases before the United States Supreme Court. To our amazement, this application seeks additional fees of $235,495 and expenses of $1,532.23. Therefore, for the preparation of the briefs and oral arguments in this court and preparation of the brief in the Supreme Court in two consolidated black lung cases involving an uncomplicated question of statutory interpretation, the attorneys are seeking $312,290.94 in fees, an obscene amount when consideration is given to the issue involved and the circuit court decisions already in place at the time of the appeals.

Charlie Broyles filed for black lung benefits in 1976. The administrative law judge, however, denied the claim, and the Benefits Review Board affirmed the denial. On appeal to this court, Broyles was represented by the Legal Assistance Foundation of Chicago (LAFC) and the firm of Chadwell & Kayser, Ltd.

Lisa Kay Colley is the daughter and surviving heir of Bill Colley, a coal miner, who died while his claim for black lung benefits was pending. The daughter pursued the claim and appealed to this court the adverse decision of the Benefits Review Board. Colley's opening brief in this court was prepared by Ellyn Hershman, Esq. of Spector and Lenz, P.C. After attorney Hershman became ill, Ms. Colley retained Jenner and Block to prepare the reply brief and to argue the case before this court. After briefs had been filed, the Broyles and Colley cases were consolidated for argument, because the same issue was presented in each appeal. Jenner and Block was retained by appellant Broyles to argue his appeal so only one oral argument was made before our court.

For work in our court, the attorneys claim 372.52 hours of legal work at hourly rates that vary from $100 to $185. They claim these rates are the hourly rates currently being charged by the attorneys. These attorneys also seek a multiplier of 1.3 to compensate them for the risk of nonpayment because of the possibility of losing the case. That is, they seek an increase in the normal lodestar fee (*reasonable* hours expended X *reasonable* hourly rate) by 30 percent because of the contingency that they will be compensated only if they win. They urge the application of this multiplier because in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 730, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585 (1987), four of the justices stated that a risk multiplier should be limited to no more than 1.3. However, this issue has now been resolved by *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), in which the Court held that the typical fee shifting statute does not permit an attorney's fee award to be enhanced on account of contingency.

The Director, Office of Workmen's Compensation Programs, has conceded that the claimants prevailed and that the attorneys are entitled to a *reasonable* fee for servic-

es rendered in this court. However, the Director objects to the 1.3 multiplier of the lodestar figure and to the use of current hourly rates and asserts that hourly rates being charged by the attorneys at the time the legal services were performed should be applied.

The Director has not challenged the number of hours claimed by these attorneys, but we are concerned with the total of 372.52 hours claimed for legal services in this court. We realize that until the appeals were consolidated for argument, the cases were handled separately and separate briefs were filed with our court. This occasioned some duplication of effort that could not be foreseen; however, even with this duplication, the hours claimed appear to be excessive when one considers the extensive experience claimed by the attorneys and the hourly rates charged by them, the state of the law on the issue presented, and the undisputed facts in each case. An attorney, who claims considerable experience in the field of black lung law and charges an hourly fee commensurate with his experience, should be able to research and write a brief in his field of expertise without the expenditure of excess time.

Our opinion was brief and reached the same conclusions as the Third Circuit reached in *Halon v. Director, OWCP*, 713 F.2d 21 (3d Cir.1983), and the Eighth Circuit reached in *Coughlan v. Director, OWCP*, 757 F.2d 966 (8th Cir.1985). *Halon* is cited seven times in the *Broyles* brief and five times in the *Colley* brief, and *Coughlan* is cited six times in each brief. These guideposts were in place, and it did not require great research or skill to find them and call them to this court's attention.

Although the Director has not challenged the number of hours claimed, we have the responsibility of determining whether the fees sought are *reasonable*, and this requires an examination of whether the hours claimed are *reasonable* when viewed in the light of the question presented, the state of the law, and the experience and expertise of the attorneys. The statute, 33 U.S.C. § 928(a), as incorporated by 30

U.S.C. § 932(a), "requires that the fees awarded be 'reasonable.'" *United States Department of Labor v. Triplett*, 494 U.S. 715, 725, 110 S.Ct. 1428, 1434, 108 L.Ed.2d 701.

*Triplett* also found that the payment of reasonable fees had been interpreted by the Department of Labor as requiring compensation for delay. *Id.* The petitioners seek to be compensated for both delay and for the contingency of losing the appeal. Therefore, they have used current hourly rates to compensate for delay and a 1.3 multiplier to cover contingency.

We find that the use of current hourly rates applies because the Department of Labor has agreed with this practice. However, we would find no justification for a multiplier of the lodestar figure, even though *City of Burlington, supra*, has decided this issue. The present cases were not exceptional; they presented a single issue, and the decisions from the Third and Eighth Circuits favoring the claimants were already in place before the present appeals were taken or the briefs prepared. A multiplier is not necessary to encourage attorneys to handle black lung litigation. These cases are argued before our court almost every term. While some of these claims are unsuccessful, the claimants win a sufficient number to encourage lawyers to handle this type of litigation through the administrative proceedings and into the federal court.

We are greatly concerned by the claim for fees in our court. As mentioned above, separate briefs were filed on behalf of Broyles and Colley, but it is obvious from the time records of attorney Hershman that she was aware of the *Broyles* appeal when she was preparing her brief for Colley. In the month preceding the date of the filing of her brief, February 17, 1987, she claims 13 hours for meetings with attorney Julian Henriques, who was handling the *Broyles* case. We are also concerned by her hourly claim which never lists anything less than 15 minutes, including a large number of telephone calls to the Office of the Clerk of this Court. We are familiar with the operation of our Clerk's

Office and it does not take 15 minutes to get an answer from a deputy clerk or a calendar clerk as to the expected date of argument, time for filing briefs, etc. This same 15 minute problem applies to such routine claims as "receipt and review of oral argument notice," "receipt and review of court order granting substitution of parties," "receipt and review of order granting extension of time," and other routine items that would not take anyone, particularly an experienced attorney, 15 minutes to complete. She also claims to have spent one hour reading our opinion, which was only 11 short paragraphs in length and followed the decisions of the Third and Eighth Circuits in *Halon* and *Coughlan.*

Attorney Julian N. Henriques, Jr., an attorney with LAFC, has been practicing law for more than 16 years. He claims considerable expertise in black lung litigation and lists 19 reported cases from various state courts, federal courts of appeal and even the United States Supreme Court as some of the major cases of which he has been lead counsel or to which he has made substantial contributions. He claims 179.1 hours of work in connection with the appeal to our court. Of this amount, 97.9 hours are claimed for preparation of the brief and 73.9 hours for preparation of the reply brief. We have reread both briefs in connection with this fee petition. The reply brief is little more than a restatement of the original brief. Both rely upon *Coughlan* and *Halon.* We can only conclude that either the hours claimed for this work or the hourly rate claimed by the attorney, or both, are quite unreasonable. An attorney who is an expert in black lung litigation should be able to prepare the brief filed in this case, and particularly the reply brief filed in this case, in a fraction of the time claimed by this applicant.

Attorneys and the court must keep in mind that the statute provides for reasonable attorneys' fees and such fees are determined by the *reasonable* number of hours multiplied by a *reasonable* hourly rate. What is reasonable depends upon the issues presented and the state of the law on this subject. The present case involved no dispute as to the facts and only the interpretation of a statute. While the amount of fees claimed in our court shocks the conscience, the petition for fees in the United States Supreme Court raises this shock to the fourth power. Three attorneys (Henriques, Lehrer, and Reott) and one law clerk worked on the final appeal. They calculated their fees based on a total of 1,189.4 hours, but in checking the individual time records we find 1,204.3 hours. The attorneys are claiming more than 1200 hours and asking for more than $240,000 in a simple case involving statutory interpretation, when none of the attorneys actually argued the appeal, and the Supreme Court had already granted certiorari in *Pittston Coal Group v. Sebben.* Such an application borders on being unreasonable per se, but we will outline some of the items that appeared to be incongruous and are unreasonable.

Attorney Henriques claims more than 10 hours a day on 22 different days between June 6, 1988, and July 13, 1988. He billed 11 or more hours on 14 different occasions, 12 or more hours on 3 occasions, and billed 13.3 hours on July 8, 14.2 hours on June 14, and 15.2 hours on July 9, 1988. He also claims to have worked 41 consecutive days between June 5 and July 15, 1988, billing a total of 396.3 hours, or an average of 9.76 hours per day.

Henriques also claims that between May 31, 1988 and June 8, 1988, he spent 77.4 hours, an average of 9.68 hours per day in drafting sections of the brief. From June 13 through June 15, he claimed 34.3 hours for research of a constitutional issue. Neither our court nor the Supreme Court found any constitutional issue involved.

Attorney Lehrer, working for the same firm, billed 10 or more hours on 13 different dates between June 13 and July 13, 1988. During this same period, he claimed 11 hours on 9 days, 12 on 4 days and 13 or more hours on 2 days. Lehrer billed a total of 284 hours between June 8 and July 15, 1988, taking only five days off from this case during this period. The law clerk, Susan Coler, billed 71.5 hours between July 10 and July 14, 1988, an average of 14.3 hours per day an average that boggles the

mind with most of it listed as "cite checking".

We also question the time claimed by Reott and Lehrer for preparing the opposition to the government's petition for certiorari. They claim 71.3 hours for work spent in this effort; however, their opposition is substantially the same as that filed in opposition to the petition for certiorari in *Kyle v. Director, OWCP*, 819 F.2d 139 (6th Cir. 1987). Lehrer requested and was compensated for 16.4 hours spent in drafting the *Kyle* opposition. The brief in opposition to the petition for certiorari in *Broyles* is eight pages, consisting of three and a half pages of factual summary and four and a half pages of argument. The argument in the *Kyle* opposition is also four and a half pages and quite similar to *Broyles*. The time required of Lehrer to prepare the brief in opposition to the petition for certiorari in Broyles should be considerably less than what he charged in Kyle, but he is claiming four and a half times as many hours for the second, almost identical, brief.

Attorney Henriques claims 78.9 hours between April 20 and May 20, 1988 reading black lung cases. However, Henriques, Lehrer and Reott claim to be experienced black lung litigators and charge fees reflecting this experience. At the time Henriques claims to have spent what amounts to two normal work weeks reading black lung cases, five different circuits had decided the substantive issue in question. *See Halon v. Director, OWCP*, 713 F.2d 21 (3d Cir.1983); *Broyles v. Director, OWCP*, 824 F.2d 327 (4th Cir.1987); *Kyle v. Director, OWCP*, 819 F.2d 139 (6th Cir.1987); *Strike v. Director, OWCP*, 817 F.2d 395 (7th Cir. 1987); and *Coughlan v. Director, OWCP*, 757 F.2d 966 (8th Cir.1985). Henriques handled the appeal of this case before the Fourth Circuit and a similar one before the Sixth Circuit, and he should have been familiar with the law and not needed 79 hours additional reading in this field.

We also question the 43 hours claimed to have been spent researching the law of deference. The law in this field is well established and these attorneys address the same issue in their appeals of *Broyles* to the Fourth Circuit and *Kyle* to the Sixth Circuit. We also question the need for the attorneys to have spent approximately 27 hours researching this question after the law clerk had spent 18.8 hours on the same subject.

Attorneys Lehrer and Henriques claim 39.7 hours for conferences with one another during the time the brief was being prepared. This is unreasonable: Both claim to be experienced black lung litigators; the issue presented was clear; five circuits had already ruled; and we cannot imagine what could require almost 40 hours of conferences that could be considered reasonable for legal experts in the field.

For drafting, redrafting, and editing the brief, attorneys Henriques and Lehrer claim 434.6 hours, this amounts to 9.24 hours for drafting each page of the Supreme Court brief. Of this amount, they claim 171.5 hours in drafting the introduction, the statement, and the statutory construction sections. They claim to have spent 63.3 hours drafting and revising the statement, which is 10½ pages long, and consists of three sections: Facts (2½ pages), Development of Black Lung Benefits Law (6½ pages), and Procedural History (1½ pages). These are the same attorneys who prepared the *Broyles* brief before our court and were obviously familiar with the facts and the procedural history as well as the law governing black lung benefits. The sections discussing the development of the Black Lung Benefits Act and the interim presumptions were not lifted verbatim from the Fourth Circuit brief and go into more detail. However, the majority of this information is discussed in *Strike* and *Halon*, which was already available to them.

They claim to have spent 110.3 hours drafting and revising the introduction and the statutory construction sections of the argument, Sections A and B. Section A contains the argument that the Department of Labor presumption is more restrictive than the HEW presumption, which was the same argument made to our court in

*Broyles.* A comparison of the two briefs indicates that although the arguments are not identical, they are quite similar, and this same issue has been discussed in four other circuit court opinions. In Section B, they argue that the interim presumption applies to both medical and nonmedical criteria. This same argument was made to our court in the reply brief and is discussed in several circuit court opinions.

The attorneys claim to have spent 27.7 hours drafting a one page section of the brief covering "APA/Relief," which we find to be unreasonable. We are also concerned by the 155.3 hours the attorneys claim for drafting and revising the legislative history section of their brief. They are experienced black lung litigators and have dealt with this issue previously.

Both attorneys Henriques and Lehrer claim hourly rates of $167 but spent an inordinate amount of time doing work that is usually left to law clerks and paralegals. They claim 118.8 hours for checking citations, editing and proofreading their brief, although their law clerk claimed an additional 89 hours doing the same thing. It is difficult to understand how 210 hours could be spent on this chore and why the attorneys should be paid for doing clerical work. Henriques claims 12.1 hours on July 25 and 26 proofreading galleys and adding page numbers; however, the brief was mailed on July 15.

The above comments on the petition for fees clearly indicate that the attorneys are seeking an unreasonable amount for their services. Attorneys' fees are determined by multiplying a *reasonable* hourly rate by a *reasonable* number of hours and the complexity of the issues presented. As stated above, this was a simple, one issue case with agreed facts. The lawyers claim a high hourly rate based upon their asserted expertise in the black lung field. We have neither the time nor the inclination to nitpick this petition by attempting to approve or disapprove the number of hours claimed on each day for the work claimed to have been done. Such a task would require the taking of considerable testimony, in view of the fact that we find the affidavits inadequate to justify the hours claimed. This is no more than an average case involving one facet of black lung litigation. Its only claim to being unusual is the fact that it was gathered into the Supreme Court with the other cases covered by the *Sebben* decision. We have checked the records of our Clerk's Office and find that fees that have been approved for attorneys representing successful black lung claimants in our court have ranged from $12,000 to $15,000. Cases in the higher range involved multiple issues and disputed facts. The present case would fall in the lower range because there is only a single issue and no dispute in the facts. Since there was some duplication of effort in the preparation of briefs before the *Broyles* and *Colley* cases were consolidated for argument, we feel that a total fee for services by all of the attorneys in the United States Court of Appeals for the Fourth Circuit should be $18,000. Any more would be unreasonable and inappropriate. In addition to this, the attorneys are entitled to be reimbursed for their expenses of $2,658.96.

We realize that when cases go to the United States Supreme Court more time is required, but again we must remember that the issue in this case had already been decided by five circuits and certiorari had been granted in *Sebben* before it was sought in *Broyles* and *Colley.* Also, the attorneys now seeking payment did not participate in oral argument before the Supreme Court. We are also conscious of the fact that the solicitor general in his return to the application for attorneys' fee suggested a fee considerably higher than we adopt, but substantially lower than the attorneys are seeking. However, it is for the courts and not the solicitor general to determine the reasonable number of hours attorneys may charge when seeking such a fee. We conclude that a fee of $25,000 for the work done in the United States Supreme Court plus expenses of $1,532.23 is reasonable and proper under the facts of this case.

We therefore conclude that a maximum reasonable fee for legal services in the Court of Appeals and the Supreme Court is

Forty Three Thousand Dollars ($43,000.00) together with $4,191.19 expenses, and this amount is approved. We will leave it to the attorneys to divide this sum among themselves.