33 F.3d 54
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BETH-ELKHORN CORPORATION, Petitioner-Appellant,
v.
Andrew BAKER, et al., Respondents-Appellees.
 No. 93-3885.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1994.
 
 Before: KEITH, MILBURN, Circuit Judges, and WELLFORD, Senior Judge.
 PER CURIAM:
 
 
 1
 Petitioner-Appellant Beth-Elkhorn Corporation ("Beth-Elkhorn") appeals the decision of the Benefits Review Board (the "Board") awarding black lung disability benefits to Respondent-Appellee Andrew Baker ("Baker"). For the reasons stated below, we AFFIRM the Board's award of benefits.
 
 I. Statement of the Facts
 
 2
 In 1979, Baker who worked for Beth-Elkhorn from 1969 to 1981 and in the coal mining industry for approximately 35 years, began experiencing breathing difficulties which required medical treatment. On January 29, 1981, Baker filed an application for black lung benefits which was denied by the District Director. In 1986, Administrative Law Judge (ALJ) Musgrove conducted a formal hearing and awarded Baker benefits. In his first opinion, ALJ Musgrove thoroughly reviewed all the medical and lay testimony in the record. First, he reviewed and summarized X-rays, arterial gas studies, pulmonary function studies, and physicians' reports and depositions. After properly weighing all the evidence, ALJ Musgrove specifically found that Baker's pneumoconiosis established total disability pursuant to 20 C.F.R. Sec. 718.202(c)(4). ALJ Musgrove then concluded that due to Baker's years of coal mine employment, he was entitled to a presumption that his disease arose out of coal mine employment. See 20 C.F.R. Sec. 718.203(b). He then found that no evidence of record rebutted the presumption.
 
 
 3
 Beth-Elkhorn appealed the decision. On December 19, 1988, the Benefits Review Board (the "Board") vacated the decision and remanded the case. The Board affirmed ALJ Musgrove's finding that Baker had pneumoconiosis, but found that ALJ Musgrove failed to consider all evidence, like and unlike, as required by Sec. 718.204(c).
 
 
 4
 On remand, ALJ Musgrove provided a second detailed opinion. ALJ Musgrove engaged in another exhaustive review of the medical evidence of record and awarded benefits a second time. Beth-Elkhorn again appealed and the Board again remanded the case ordering ALJ Musgrove to "weigh together the pulmonary function and blood gas evidence with the medical reports relevant to the issue of total disability pursuant to Section 718.204(c)...." (JA at 38). The Board further stated that "if, on remand, the administrative law judge, after weighing together the like and unlike evidence, concludes that claimant has established total disability pursuant to Section 718.204(c), invocation of the presumption at Section 718.305 will have been established, and, in the instant case, benefits may be awarded." (JA at 39).
 
 
 5
 On remand, because ALJ Musgrove died, the case was assigned to ALJ Gilday. ALJ Gilday reconsidered the evidence, both like and unlike, and concluded the evidence did not establish total disability. Baker appealed the denial of benefits. On appeal, the Board reversed the denial of benefits and awarded benefits holding that "[u]pon further consideration and reflection, we find that Judge Musgrove properly conducted a Fields/Shedlock weighing of all the relevant evidence at Section 718.204(c) before finding claimant entitled to benefits." (JA at 49). Moreover, the Board concluded that reversal was warranted to avoid manifest injustice. (JA at 49). This timely appeal followed.
 
 II. Discussion
 
 6
 On appeal, Beth-Elkhorn argues the Board erred by reversing ALJ Gilday and awarding benefits.[1] Beth-Elkhorn specifically asserts the Board erred by finding that:
 
 
 7
 (1) rebuttal is precluded under Sec. 718.305; and
 
 
 8
 (2) an exception to the law of the case doctrine warranted reversing ALJ Gilday's denial of benefits.
 
 
 9
 For the reasons stated below, we disagree.
 
 
 10
 We review the Board's decisions to determine whether they are supported by substantial evidence and are consistent with applicable law. O'Keefe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965)); Gibas v. Saginaw Mining Co., 748 F.2d 1112 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985). Substantial evidence is more than a scintilla of evidence, but only such evidence that a reasonable mind might accept as adequate to support a conclusion. Richard v. Perales, 402 U.S. 389, 401 (1971). "If adequately supported by the evidence and not inconsistent with the law, the administrative law judge's determination is conclusive, and it is immaterial that the facts permit the drawing of diverse inferences." Parker v. Director, 590 F.2d 748, 749 (8th Cir.1979) (citing Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 477-78 (1947)); see also Freeman v. Director, O.W.C.P., 781 F.2d 79 (6th Cir.1985).
 
 A. Rebuttal is precluded under Sec. 718.305
 
 11
 Section 718.305(a) provides that if a miner worked at least fifteen years in one or more underground coal mines, and if evidence indicates the existence of totally disabling respiratory or pulmonary impairment, then a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis. The presumption may be rebutted only by establishing (1) the miner does not have pneumoconiosis, or (2) that his respiratory impairment did not arise out of coal mine employment.
 
 
 12
 Beth-Elkhorn contends ALJ Musgrove "fail[ed] to discuss a viable method of rebuttal under Section 718.305 or discuss the disability causation element generally under Section 718.204 ...," (Appellant's Brief at 11),[2] and therefore, the Board erred by concluding rebuttal was precluded. A close examination of the record shows this argument lacks merit.
 
 In his first opinion, ALJ Musgrove stated:
 
 13
 Thus, we have the hospital records and the opinions of Drs. Hieronymus, Nash, and Clarke, to support a finding of total disability. On the other hand, Dr. T. Wright stated in his deposition that the claimant could return to work in a mine meeting federal dust control regulations. Since this contradicts his earlier finding of total disability for arduous labor, I find that it is entitled to little weight. This leaves only Dr. O'Neill's opinion which found that the claimant has the respiratory capacity for coal mine employment or similar work. Dr. O'Neill specializes in internal medicine and his opinion is respected. However, when weighed against the totality of the other physicians' opinions and laboratory results, I find that his opinion alone is insufficient to preclude a finding of total disability under this subsection.
 
 
 14
 The claimant testified that he has had difficulty breathing since 1979, and has been taking breathing medications throughout this period. He described his daily activities as being limited to mostly sitting around. His testimony lends further support to the medical evidence which found that he was totally disabled by his respiratory condition.
 
 
 15
 Accordingly, the claimant has established that he is totally disabled under Section 718.204, and therefore the presumption of sub-Section 305 is applicable, permitting a finding of pneumoconiosis under Section 718.202(a)(3).
 
 
 16
 (JA at 13). The above excerpt indicates ALJ Musgrove considered the like and unlike evidence in great detail. By considering and discounting the contrary evidence, ALJ Musgrove rejected any assertions by Beth-Elkhorn that Baker did not have pneumoconiosis, and therefore, implicitly rejected the same as rebuttal evidence.
 
 
 17
 In determining whether Baker's illness arose from coal mining work, i.e. causation, ALJ Musgrove found pursuant to Sec. 718.203(b), that "Baker's lengthy coal mine employment history entitles him to this presumption [that the disease arose out of coal mine employment]" and that "[t]here is no evidence of record to rebut this conclusion." (JA at 13). As noted above, ALJ Musgrove clearly considered and discounted the evidence indicating Baker did not suffer from pneumoconiosis. He, therefore, implicitly found that Beth-Elkhorn's evidence that Baker did not have the disease did not rebut the Sec. 718.305 presumption. In his order, ALJ Musgrove noted that no causation evidence had been presented to rebut the presumption. Thus, substantial evidence supports the Board's conclusion that rebuttal is precluded. See Adams v. Director, O.W.C.P., 886 F.2d 818, 825 (6th Cir.1989).
 
 
 18
 B. Substantial evidence supports the Board's determination that an exception to the law of the case doctrine exists and warrants the award of Benefits
 
 
 19
 Beth-Elkhorn next argues no exception to the law of case doctrine exists, and therefore, the Board's reversal of ALJ Gilday's order is improper. We disagree.
 
 
 20
 Under the doctrine of the law of the case, a court's prior rulings in a case continue to govern the same issues in subsequent stages of the same case. Cale v. Johnson, 861 F.2d 943, 947 (6th Cir.1988). Reconsideration of a prior decision, however, is justified if there is an intervening change in law, new evidence is available, or if the prior decision is clearly erroneous and a manifest injustice will result. Id. Our review of the Board's decisions are limited to determining whether ALJ Musgrove's original award of benefits was supported by substantial evidence and consistent with applicable law. If ALJ Musgrove's award was supported by sufficient evidence, the Board properly affirmed his decision.
 
 
 21
 Here, substantial evidence supports ALJ Musgrove's original decision and that decision is consistent with applicable law. Consequently, failure to correct the prior rulings vacating Baker's award would deny him benefits to which he is entitled, and result in manifest injustice. Thus, substantial evidence supports the Board's award of benefits to Baker.
 
 III. Conclusion
 
 22
 For the reasons stated above, we AFFIRM the Board's award of benefits.
 
 WELLFORD, Senior Circuit Judge, dissenting:
 
 23
 Because I would find no error in the first two decisions of the Benefits Review Board (BRB No. 86-2945 BLA (12/19/88) and BRB No. 89-2592 BLA (6/26/91)), and the decision and order of ALJ Bernard J. Gilday, Jr. (OWCP No. cqn-rb-ppkc(2/4/92)), I dissent from the opinion of the majority of the panel.
 
 
 24
 ALJ Gilday correctly observed that "[v]entilatory studies and blood gas tests measure the degree of impairment of pulmonary function," and that "[n]one of the pulmonary function studies produced a qualifying value," except one "particularly low FEV1 of 1.25 obtained by Dr. Clarke." The ALJ was also correct in finding that Dr. Clarke's study "is unreliable" because "tracings were not provided," and because this study was entirely inconsistent with six other such studies done in 1980 and 1981 by five other doctors.[1] Dr. Clarke was the only doctor who opined that pulmonary studies indicated that Baker suffered from pneumoconiosis, and he disregarded the use of blood gas studies in determining the existence of pneumoconiosis or serious pulmonary impairment. The previous ALJ, Musgrove, erroneously in my view, fully credited Dr. Clarke despite the clear objective evidence to the contrary.
 
 
 25
 I also believe that ALJ Gilday was correct in his opinion that "contrary, probative evidence, which includes all evidence, medical and otherwise, which is contrary [to medical opinions] and probative, must be assigned appropriate weight" in determining "whether Claimant has carried his burden of proving the presence of a totally disabling respiratory impairment." (emphasis added). See, Fields v. Island Creek Coal Co., 10 BLR 1-19 (1988); Shedlock v. Bethlehem Mines Corp., 9 BLR 1-195 (1986); Grant v. Director, OWCP, 857 F.2d 1102, 1105 (6th Cir.1988); Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir.1983); Neace v. Director, OWCP, 867 F.2d 264, 268 (6th Cir.1989). The blood gas studies in this case also furnish substantial support for ALJ Gilday's decision that Baker "failed to establish entitlement to benefits." ALJ Musgrove also found that none of the pulmonary function studies (including Dr. Clarke's) qualifies "as reflective of total disability" under Sec. 718.204(c)(1). ALJ Musgrove also found that blood gas studies taken from 1980 to 1983 "are non-qualifying."
 
 
 26
 ALJ Musgrove's chart in his first opinion made reference to ten x-ray readings of the claimant by non-"B" readers, or those who were not board-certified radiologists ("BCR's").[2] There were four "B" readers or BCR's who read x-rays as positive (one in 1986); six read x-rays of Baker from 1981 through 1986 as negative for pneumoconiosis.[3] Original 1980 x-ray films read by Drs. T.L. Wright, Clarke, Straughan and Nash as positive were not furnished in accordance with Sec. 718.102(d), but the employer's objection was overruled by that ALJ. It is evident that the majority of the "expert" x-ray readings in this case did not reflect the existence of pneumoconiosis.
 
 
 27
 Those who gave favorable medical opinions as to the existence of pneumoconiosis or serious pulmonary impairment due to coal mining were Drs. T.L. Wright, Clarke, Nash and Hieronymus. ALJ Musgrove acknowledged, however, that Dr. T.L. Wright "stated that the claimant could return to coal mining" under "federal dust level regulations." He was not a "B" reader and he also noted Baker's fifteen to twenty years smoking history. Dr. T.L. Wright acknowledged non-qualifying pulmonary function and blood gas study values.
 
 
 28
 We have previously discussed Dr. Clarke's medical opinion, which is obviously of little value under the circumstances reflected in the record. He testified for claimants 99% of the time, and he admitted that he did not follow the Department of Labor Sec. 718 standards as to pulmonary function testing.
 
 
 29
 We turn next to Dr. Nash, an anesthesiologist, Baker's physician. The underlying studies, as found by ALJ Gilday, do not support his medical opinion which, incidentally, contrary to the medical information furnished other doctors, noted only a ten-year smoking history. He was the only doctor to interpret a blood gas study as "indicating respiratory acidosis." ALJ Gilday also observed that Dr. Nash has been disciplined "for prescribing various controlled substances without a legitimate medical purpose." His credentials are indeed "inferior" compared to those who gave medical opinions that Baker did not qualify for benefits under the Black Lung Act. I do not agree with the majority that under the circumstances Dr. Nash's unsupported opinion is entitled to "great weight."[4]
 
 
 30
 Dr. Hieronymus found an x-ray study to be negative for pneumoconiosis, according to ALJ Musgrove. Despite other objective pulmonary studies reflecting no evidence of "obstructive or restrictive defect," Dr. Hieronymus opined "small airways disease related to coal mine employment, and chronic pulmonary disease." He did not address specifically Baker's ability to work.
 
 
 31
 In sum, I am persuaded that the reasoned medical opinions of Drs. O'Neill and Ballard Wright were improperly discredited or discounted by ALJ Musgrove throughout, and that ALJ Gilday found substantial support in the record that the overwhelming objective evidence, coupled with these medical opinions, "outweighed the evidence supportive of a finding of total respiratory disability." The opinions of Dr. Clarke and Dr. Nash should have been severely discounted by the Board for the reasons indicated herein. ALJ Musgrove, as found by the Board, "did not weight the like and unlike evidence in finding total disability" in his original decision or on remand. He failed to weigh or evaluate medical opinion evidence of not "equally qualified physicians," and discredit opinions which did not represent objectively supportable and "reasoned medical judgment." Baker failed in his burden to establish total disability due to coal mining activity.
 
 
 32
 I would reverse the Board's grant of benefits, accordingly, and I would find ALJ Gilday's decision to be strongly supported by the record in this case.
 
 
 
 [1]
 During oral argument, Beth-Elkhorn argued for the first time that ALJ Musgrove erred by relying upon evidence from Drs. Nash and Clarke because they did not exercise reasoned medical judgment based on medically acceptable clinical and laboratory diagnostic techniques as required by 20 C.F.R. Sec. 718.204(c)(4). To accept an examining physician's medical opinion, an ALJ must examine the validity of that opinion in light of the medical evidence on which the doctor's reasoning is based. Director, O.W.C.P. v. Rowe, 710 F.2d 251, 255 (6th Cir.1983). The determination as to whether a doctor's opinion is sufficiently documented and reasoned is essentially a credibility issue. Id. Moreover, the opinion of the treating physician is entitled to great weight. Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987)
 In his first opinion, ALJ Musgrove found the doctors' opinions credible. Testimony revealed that both doctors were amply qualified to render medical opinions. For instance, although not a pulmonary medicine specialist, Dr. Nash had over 30 years of practice and examined several hundred patients for black lung. (JA at 142). Additionally, his practice primarily consists of treating families who have coal mining experience in and around the mines. Id. We note that although Dr. Clarke stated that he did not use Sec. 718 standards, he explained in great detail why he did not approve of the current standards and stated that he approved of and used the old VA standards which were used for over 20 years. (JA at 136). Both doctors examined Baker and conducted independent objective tests. Further, because Dr. Nash was Baker's treating physician, his opinion is entitled to great weight. Thus, sufficient evidence exists to warrant the ALJ's reliance on their opinions.
 
 
 [2]
 Section 718.204(c)(4) provides in pertinent part:
 (c) Criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability:
 (4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment....
 
 
 [20]
 C.F.R. Sec. 718.204(c)(4)
 
 
 [1]
 The lowest other FEV value found was 3.00; four were 3.20 or higher; only Dr. Clarke failed to produce tracings
 
 
 [2]
 A "B" reader is a physician with special proficiency to review such readings
 
 
 [3]
 Dr. R.P. O'Neill first read an x-ray of Baker as negative in 1981; he apparently later became a "B" reader and read a later Baker x-ray as negative in 1986. Musgrove miscalculated the number of negative "B" readers and BCR readers' interpretations in his first opinion as five instead of six (Cole-2, White, Felson, Myers and O'Neill), perhaps a significant error. He resolved his doubt, based on only a five to four negative majority in claimant's favor, instead of correctly counting ten such expert readings, six of which were unfavorable to Baker. The later readings strongly indicated negative findings
 
 
 [4]
 The majority relies on the case of Hardaway v. Secretary, HHS, 823 F.2d 922, 927 (6th Cir.1987), to support this proposition. Hardaway is a social security and not a black lung case. Furthermore, the Hardaway court noted: "[T]he determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." Id